THE UNION LOCOMOTIVE AND EXPRESS COMPANY v. THE ERIE RAILWAY COMPANY.

1. A contract between a railroad company operating a railroad in this state under acts of the legislature of this state, and certain individuals, the effect of which is to give the latter, the exclusive right of transporting certain kinds of freight over their railroad, is void from considerations of public policy.
2. A contract which has been recognized as valid by the courts of another state, will not be enforced by the courts of this state, if it is in violation of the public policy of this state.
3. The defendants intending to put an end to a contract with the plaintiffs, proposed to pay a certain sum for a release from the contract.   In an action by the plaintiffs for the breach of the original contract—*held*,
   1. That the proposition was an offer of a compromise which was not binding unless accepted.
   2. That, if accepted, the consideration which gave it validity as an agreement, was the release and extinguishment of the former contract.
   3. That, if the plaintiffs intended to hold the defendants to the terms of the offer, they should have sued on the agreement of compromise, if an agreement was concluded; and that they could not sue on the original contract, and use the offer of the defendants as a liquidation of the damages they had sustained by a breach of the original contract.

On rule to show cause.

Argued at November Term, 1873, before the CHIEF JUSTICE, and Justices WOODHULL, DEPUE and VAN SYCKEL.

For the defendant, *I. W. Scudder*.

Contra, *A. B. Woodruff* and *C. Parker*.

The opinion of the court was delivered by

DEPUE, J.   The action in this case was brought on an agreement made on the 18th of May, 1869, between the Erie Railway Company and Kasson & Co., which was assigned by Kasson & Co. to the Union Locomotive Express Company, the plaintiffs, on the same day of its execution.

The agreement recites that : " Whereas the party of the second part own, and are desirous on their own account, to construct certain cars of an unusual size and of great strength, weight and capacity, whereon locomotive engines and tenders can be conveyed over the railway of the party of the first part,. in the states of New Jersey, New York and Pennsylvania ; and whereas, such cars, with the locomotive engines thereon, when drawn over the railway of the party of the first part, will subject the same to greater wear and strain than that produced by the ordinary cars constructed and used on said railway for the transportation of freight and passengers." It contains two classes of agreements on the part of the defendants.   First, that the trucks and cars of Kasson & Co.,. and the locomotive engines and tenders thereon, shall be hauled and moved over the defendants' railroad, by motive power to be supplied by the defendants ; and, second, that their cars should be the only cars employed in carrying locomotive engines and tenders over the defendants' road.   The other stipulations for present purposes, are immaterial.   The agreement is set out in full in the reported case between these parties in 6 *Vroom* 240.

The declaration contains three counts.   The breaches assigned to the first and second counts, so far as at present material, are, that the defendants refused to permit the plaintiffs to transport locomotive engines and tenders on their railway, under the said contract ; that they allowed other persons to put cars on their railway to transport locomotive

Union Locomotive and Express Co. v. Erie Railway Co.

engines and tenders thereupon ; and that the defendants themselves engaged in the business of carrying locomotive engines and tenders over their road, and received the freight and charges therefor. The breach assigned in the third count, which was added by way of amendment at the trial, is, that the defendants expressly rescinded, annulled and discharged the said agreement. The damages claimed were the sum of $100,000.

The defendants were engaged in the business of common carriers in this state, over certain railroads which were leased to them, under the authority of acts of the legislature of this state. The court charged the jury, that so much of the said contract as was designed to give the plaintiffs a monopoly of the right to transport this kind of freight, and to debar the defendants from carrying, or permitting others to have transported over their railroad, freight of this description, was void from considerations of public policy ; and that the plaintiffs could have no legal remedy to recover damages for the infringement of their exclusive privileges. The instructions of the court on this head are in accordance with the decision of this court in *Messenger* v. *The Pennsylvania R. R. Co.*, 7 *Vroom* 407. The order of the Supreme Court of New York, in the injunction suit of Kasson & Co., against these defendants, enjoining the latter under the monopoly clause, from employing or permitting to be used in the carrying of locomotives, engines or tenders, any cars other than those provided by the plaintiffs, was properly disregarded. Upon questions of public policy, relating to our domestic affairs, depending on our own legislation, the courts of this state alone are competent to determine. The opinion of a court of another state on a subject of this character in another proceeding, will be treated with the greatest respect, but will not be yielded to as conclusive. A contract valid elsewhere, will not be enforced if it is condemned by positive law, or is inconsistent with the public policy of the country, the aid of whose tribunals is invoked for the purpose of giving it effect. *Hope* v. *Hope*, 8 *De G., M. & G.* 730 ; *Grell* v. *Levy*, 16 *C. B.* (*N. S.*) 73 ;

*Varnum* v. *Camp*, 1 *Green* 326 ; *Watson* v. *Murray*, 8 *C. E. Green* 257.

The case at the trial was therefore put upon the agreement by the defendants, to permit the plaintiffs to place their trucks and cars on the defendants' road, and to provide the motive power for transporting the same, and the breach of this agreement, by the defendants, in their refusal to permit the plaintiffs to transport locomotives over the defendants' road under the said contract. The court properly charged the jury that the agreement by the defendants to transport for the plaintiffs, and that which stipulated for an exclusive right to carry, were distinct and severable ; and that the illegality of the latter did not deprive the plaintiffs of their remedy for a breach of the former. *Erie Railway Co.* v. *Union Locomotive Express Co.*, 6 *Vroom* 240. The court further charged the jury that there was no proof that the defendants had refused to carry the plaintiffs' locomotives under their obligations as common carriers, on the same footing as such freight was carried for other shippers ; but that it was proved, and not contraverted, that they repudiated the special contract, and had refused to transport for the plaintiffs in the manner and on the terms contained in that agreement.

The result of the testimony and of the charge was, to secure a verdict for the plaintiffs. That result seems, in every respect, to be free from any well grounded legal objection.

The only question of difficulty relates to the damages awarded. The charge of the court was that, there being no proof that the defendants refused, in their capacity of common carriers, to transport the plaintiffs' locomotives, and that, there being no evidence that the charges for transportation in that capacity would exceed the rates the plaintiffs were liable to pay for the same services under their contract, the damages, if awarded on the basis of loss of profits arising from a refusal to transport under the contract, would be merely nominal ; and that the damages were to be restricted to a nominal sum,

unless it appeared in the case that after the contract had been broken, the parties themselves had agreed upon what the estimate of damages should be for a breach of that kind. The jury assessed the damages at $15,000.

The cases in which the damages recoverable have been considered as liquidated by mutual agreement of the parties, are cases in which a stipulation of that nature is inserted in the agreement, which is the subject matter of the suit. The principles on which the court proceeds in determining whether damages have been liquidated by agreement of the parties, are stated in *Whitfield* v. *Levy*, 6 *Vroom* 149.

Parties may, during the pendency of an action, stipulate for the quantum of recovery, in the event of the plaintiff succeeding, if such stipulation be an agreement relating to the conduct of the cause. But such agreements, by the 55th rule of the Supreme Court, if not made in open court, are required to be put in writing, and signed by the parties. So, if a defendant has admitted, distinctly and unequivocally, that he has broken his contract, and that the plaintiff has sustained loss to a certain amount, by reason of such breach, the admission may be made testimony, to be dealt with as any other admission material to the merits of the case, as evidence to dispense with the production of, or in aid of, substantive proof of the extent of the injury suffered. Except in the instances above mentioned, a plaintiff cannot avail himself of any declarations or admissions of the defendant as the means of fixing the damages recoverable, unless it be on the basis of an agreement for the liquidation of damages.

The testimony in support of the verdict cannot be regarded in the light of an admission that the plaintiffs had sustained damages in the sum named. It can only be considered, as it was in the court below, as a liquidation of damages by agreement. An agreement of that character, to be valid, must possess all the essential elements of a contract. It must have the mutual assent of both parties, and be supported by a sufficient consideration, and, if conditional, the condition must be shown to have been performed.

The evidence relied on in this case consisted of negotiations for a compromise of this controversy. In February, 1870, an agent of the defendants sent a note to Mr. Kasson, the president of the Union Locomotive Express Company, saying that the defendants had decided that it would be better for the defendants to do the transportation of locomotives themselves, in the future; and that, to that end, Mr. Gould would negotiate with him for the abrogation of the contract, and the purchase of the plaintiffs' cars. Kasson testifies that he had a conversation, subsequently, with Mr. Gould, his version of which is as follows: "Gould was trying to settle with me in reference to paying me for abrogating the contract; he wanted to settle the damages; propositions had been talked for a settlement; I finally told Mr. Gould that if he would give me some money then, I would take a very small amount to settle this thing; he pressed the matter down to $15,000; this was in the afternoon; he then distinctly promised me to pay that $15,000; if I would come to his office next morning, at ten o'clock, he would give me the money; I went away from the office; that was all that occurred at that time; the next morning, promptly at ten o'clock, I went to his office and handed my card to the door-keeper, and asked him to hand it to Mr. Gould, and tell him I wanted to see him; he came back and said Mr. Gould was engaged; I could not see him; I waited till half past eleven; during my waiting I sent in my card once or twice; at half past eleven I was admitted; Mr. Gould said you were not here at ten o'clock, you are too late now, and I shan't pay that money—or words to that effect." Another version of the same interview is given by the same witness, as follows: "When I called on Mr. Gould, at this time, I suggested a settlement upon the basis of the last one of those propositions that had been made; he refused to accept that; then I proposed that he should make some arrangement whereby we could go on with the old contract, and that he refused to do; he said he couldn't do it; he referred to this matter about Rogers having been down there about the matter, making

a trouble about it, which he could not withstand; then, after a little more conversation, he said he would give me $15,000, and if I could come next morning, at ten o'clock, he would pay it to me in money; I believe the expression he used was to get rid of me—to close the thing up; and the Union Express Company were to give a release to the Erie Railway Company, of the contract—a release from all obligation under that old contract—and was to cancel it; that was mentioned also; I begged of him to continue the contract; he said he could not." The same witness further in answer to the question whether, if the $15,000 were paid, the plaintiffs were to do anything, testified that the plaintiffs were to release the defendants from all obligations under the old contract, and were to cancel it.

What occurred between the parties was manifestly a mere proposition to purchase a surrender of the entire contract, including the monopoly privileges guaranteed therein. That Kasson did not understand that a contract was concluded at this interview, by an acceptance of the offer on his part upon an agreement on behalf of the plaintiffs to surrender the contract, is apparent from the letters of October 20th, 1870, and February 1st, 1871, and from the bringing of this suit. A proposition or offer does not become an agreement until accepted. Before such acceptance is actually made the offer may at any time be withdrawn. 1 *Pars. Contr.* 475; *Houghwout* v. *Boisaubin*, 3 *C. E. Green* 315; *Hoboken* v. *Bailey*, 7 *Vroom* 490.

Another essential to the validity of a contract concluded by a proposition and acceptance, is, that it must be supported by an adequate consideration. In this respect, the case is analogous to an offer to compromise an existing dispute between the parties, to support which the abandonment of the original cause of action is necessary to give the transaction a legal consideration. In *Cook* v. *Wright*, 1 *B. & S.* 559, Blackburn, J., in the opinion of the court, says : "The position of the parties must necessarily be altered in every case of a compromise, so that if the question be re-opened, they

cannot be replaced as they were before the compromise.   It is this detriment to a party consenting to a compromise, arising from the necessary alteration in his position, which forms the real consideration for the promise." Substantially the same views were expressed by this court in *Conover* v. *Stillwell*, 5 *Vroom* 54, where it was held that the extinguishment of the original cause of action, by force of the compromise, was the benefit to the promisor which gave a consideration for the promise, and that a promise upon an arrangement which left the rights of the parties as they previously were, would not create a legal cause of action.   In *Smart* v. *Chell*, 4 *Jurist* 24, it was held on motion in arrest of judgment, in an action against an attorney, charged with negligence on a promise to pay a specified sum on a compromise, that the declaration was bad in not alleging that the plaintiff, as a consideration for the promise, discharged the original cause of action, it not appearing on the face of the declaration, but what he might sue and recover on the original cause of action the next day.     In *Nash* v. *Armstrong*, 10 *C. B.* (*N. S.*) 258, the precedent agreement was under seal, and objection was made to the validity of the subsequent agreement, on the ground that an agreement under seal could not be discharged by parol. It was held by the court that although for technical reasons, a contract under seal could not be discharged by parol, yet that the plaintiff having the right to enforce the benefit conferred upon him by the original contract, and having entered into an agreement not to do so, had so far changed his situation that whereas, he before had a right to sue upon the original contract, if he now exercised that right, he had rendered himself liable to an action ; and that therefore, he had given a good consideration which would support such promise.

The doctrine of the cases is, that to give a party any right whatever, flowing from negotiations for a compromise, they must result in a new agreement in substitution of a former contract or cause of action, founded on the consideration, that the party gives up and agrees not to enforce the prior contract or seek his remedy on his original cause of action.   The

cases are collected in the notes to *Stapilton* v. *Stapilton*, 3 *White and Tudor's Leading Cases*, (3d *Am. ed.*) 406. From this principle it would follow as a necessary conclusion that the party seeking to avail himself of such an agreement, must sue on the substituted agreement and not on the original cause of action. He cannot sue on the original contract, and use the substituted agreement as fixing the quantum of his recovery. If the substituted agreement has any present vitality, it destroys the original cause of action, and effectually puts it at an end.

It was contended that the plaintiffs had an election to sue on either the original contract or the second agreement. The case of *Smith* v. *Dickenson*, 3 *B. & P.* 630, was cited for that position. But under an election to have recourse to the original contract, the remedy must be had on that contract exclusively. That was the course pursued in Smith *v.* Dickerson. If the action be brought on the original contract, the second agreement must be considered as abandoned. The consideration of the second agreement being the release of the former contract, both cannot be at the same time existing and available causes of action in the hands of the plaintiff.

In the present case, the proposition for a settlement on the basis of the payment of $15,000, was not accepted. On the contrary, it has been repudiated by both parties. The defendants declined to close on the terms of the offer, on the ground that it was not accepted within the time limited. The plaintiffs have repudiated it by bringing this action. In neither count in the declaration, is there any allusion to the subsequent and substituted agreement. On the record, the claim of the plaintiffs is that their original contract has been in no wise impaired. Both in the averments in the pleadings, and in allegation of damages, the first agreement is assumed to stand in all respects as if no subsequent agreement had been made in derogation of its literal terms. The evidence in the cause, on both sides, occupying two hundred and thirty pages in the printed book, was directed to the original contract, its breach, and the nature and extent of the injury suffered by

the plaintiffs in consequence thereof. As the case was presented at the trial, it was assumed that there was no new agreement binding on the plaintiffs to accept $15,000 in satisfaction of their injury. It must therefore be assumed, also, that there was no binding agreement on the part of the defendants to pay that sum. A mere naked promise to pay, as we have seen, is not binding, for want of a legal consideration for its support.

It was suggested on the argument, that an amendment might now be allowed, by adding a count on a subsequent agreement, and the verdict be permitted to stand. It will be observed that the proposition for the payment of the $15,000 embraced a surrender of the entire contract, including the monopoly clause. That clause being illegal, the purchase of its surrender could only be supported on the ground of the prevention of litigation. This suit was afterwards brought on the original contract. And breaches assigned not only on the agreement to convey, but on the violation of the exclusive privileges. Furthermore, the payment was to be conditional on a release of the defendants from all obligations under the original contract. No release was given, or tendered, before action brought.

Upon an amendment of the pleadings, the questions will arise whether the plaintiffs have not made an election which is conclusive upon them, and whether the action on the new agreement could be maintained without the averment and proof of the tender of a release before action brought. Either of these considerations would induce the court to refuse an amendment. Another obstacle in the way of remodeling the pleadings is, that proof at the trial fails to show that any contract of that character was concluded between the parties, by an acceptance by the plaintiffs. That question was not submitted to the jury.

The verdict, as the case stands, should be set aside.