The Lehigh Valley Terminal Railway Company

*v.*

Ellen Currie, executrix, and Jeanette T. Imbrie et al.

1. An ordinance changing the grade of a street was passed to enable complainant to construct a railroad bridge. Said ordinance was removed to the supreme court on *certiorari* by defendant landowners, and work under the ordinance was stopped. Pending the litigation it was agreed that the suit should be discontinued, that all parties should consent to said change of grade and that complainant should pay to defendants a certain sum, and an additional sum was to be deposited, to be paid to defendants if the ordinance was not set aside on any other writ of *certiorari*, or if, pending any *certiorari*, the road should be actually constructed at the grade established by said ordinance; otherwise, the money deposited should be returned to complainant. Afterwards, and before the road was constructed, the ordinance was set aside on *certiorari*. After complainant had sued out a writ of error, an agreement was made whereby the grade fixed by the ordinance, except immediately under the bridge, was changed, other alterations were made, and all litigation between the parties discontinued.—*Held*, that as the ordinance was set aside before the road was constructed, and as the road was constructed, not under the ordinance, but by virtue of such agreement, defendants were not entitled to the additional amount deposited with said trustee.

2. The fact that defendants were damaged to the total amount fixed in the contract, and that complainant obtained the advantages for which the money was to be paid, did not entitle defendants to the fund under the contract.

3. As said fund was not stated, in the contract, to be compensation for damages sustained by defendants, and as the contract provided that if any assessments were made against defendants for benefits, amounting to more than the award to them, complainant should pay the excess, and as complainant had agreed to make said change in grade and all improvements at its own expense, defendants are not entitled to claim said fund as damages.

4. After said ordinance had been set aside, complainant, fearing that it would have no right to construct, under land belonging to defendants, a sewer which it had agreed with the city to construct, in order to drain the street under said bridge, and that substantial damages would be assessed for change of grade, proposed to defendants to pay the fund in controversy in satisfaction of all damages resulting from the change of grade, and to prevent their interference with the construction of said sewer.—*Held*, in a suit to determine the title to said fund under the original contract, that said proposition was inadmissible as evidence of any liability on the part of complainant.

On pleadings and proofs.

The object of the bill is to establish the right of the complainant to, and obtain the sum of, $5,000, deposited by it with two trustees, under a written agreement and circumstances, as follows:

Complainant is a corporation organized under the general laws of the State of New Jersey, and is formed by the consolidation of certain other railway companies with the Jersey City, Newark and Western Railway Company, and by that means is the successor to all the rights of that company, and, for present purposes, may be considered as identical with it. It is the proprietor of and operates a railway running from the city of Newark to the waters of New York bay, crossing Newark bay and Bergen Neck upon a course of about northwest and southeast. Bergen Neck, at that point, is crossed by a series of parallel streets, which are designated by numbers, having a course identical with that of the railway, and is traversed northeast and southwest by other streets, which are designated as Avenues A, B, C &c., within the limits of the city of Bayonne.

For purposes of a railway route, complainant and another railway company purchased, or acquired by condemnation, all the land between Fifty-ninth street and Sixtieth street, and prior to 1889, laid out its route parallel with those streets and between the two. The first avenue which its route crosses after leaving Newark bay is Avenue A, and its plan of crossing the bay, approved by the secretary of war, was such as required that it should cross that avenue at an elevation of a few feet above the natural level of the surface of the avenue at the point of crossing, and a little above the grade which had been adopted for Avenue A by the authorities of Bayonne. The avenue had never been worked to the city grade, and there were very few buildings in the neighborhood, although the land was laid out into building lots.

This plan of the complainant required that the grade of the avenue, between Fifty-ninth and Sixtieth streets, and for some considerable distance northeast of Sixtieth street and southwest of Fifty-ninth street, should be altered and the grade of the street lowered so that the railway could cross on a bridge over the avenue.

In September, 1890, the complainant caused an application to be made to the common council of the city of Bayonne for the desired change of grade, and an ordinance to that effect was adopted or passed in that month. That proceeding was removed to the supreme court by a *certiorari*, issued at the instance of the defendants, who owned most of the land fronting on both sides of Avenue A to the north of Sixtieth street and to the south of Fifty-ninth street, and which would be affected by the proposed change of grade. The company, being satisfied that that ordinance could not endure the test of judicial examination, induced another party interested to bring a *certiorari* to hasten the proceeding, so that it was set aside in November, 1890.

A fresh application, which was supposed to be free from the objections which were urged against the first one, was made in November, 1890, with the result that the city council passed an ordinance on the 16th of December, 1890, changing the grade as requested. That ordinance was vetoed by the mayor on the 27th of December, 1890, and passed over his veto on the 13th of January, 1891.

Upon the passing of that ordinance the complainant entered into a written contract with the common council by which it agreed to do all the grading of Avenue A in conformity with the grade established by the ordinance of December 16th, 1890, and to construct a main sewer on the centre line of West Fifty-ninth street, from Avenue A to Newark bay, for the use of the public, and to be connected with receiving basins to be constructed as designated by the city, and to pave with Belgian block or Macadam pavement, and properly curb the roadway and flag the sidewalks of Avenue A, from Fifty-ninth to Sixtieth street. It also provided for the lowering of the grade of Fifty-second, Fifty-third, Fifty-fourth, Fifty-fifth, Fifty-sixth, Fifty-seventh, Fifty-eighth, Fifty-ninth, Sixtieth, Sixty-first and Sixty-second streets, where they intersected with Avenue A. It also provided that it should carry its railway across the avenue on a bridge, giving an under clearance of at least thirteen feet, to be supported on piers one hundred feet apart, the width of the avenue being seventy feet, " for the purpose of encourag-

ing the laying out and constructing of a county road or boulevard at this point." It also provided that the complainant should pay all the expenses and costs of the improvement pursuant to section 62 of the charter of the city.

A second writ of *certiorari* was allowed upon the prosecution of the defendants, to remove to the supreme court this ordinance of January 16th, 1891, and the litigation under that *certiorari* was pending on the 2d of October, 1891, all work under the ordinance and contract between the complainant and the city being in the meantime stopped.

On the 2d of October, 1891, the parties to this suit entered into a contract under seal, in these words :

"Agreement made this second day of October, eighteen hundred and ninety-one, between the Executors and Trustees of the Estate of James Currie, deceased, and Jeanette Imbrie and William M. Imbrie, her husband, of the one part, and the Lehigh Valley Terminal Railway Company of the other part.

"1. The sum of thirteen thousand dollars shall be forthwith, upon the execution hereof, deposited by the company in the New Jersey Title Guarantee & Trust Company to the credit of W. D. Edwards and C. L. Corbin, Trustees, to be drawn only on their joint check.

"2. A consent to discontinue the pending suit on *certiorari* in New Jersey Supreme Court between said executors as Pros. and the City of Bayonne to review the ordinance for change of grade of Avenue A, shall be at once procured from the Attorneys of record of the Prosecutors and a rule to discontinue obtained from the Judge and entered in the Minutes, whereupon eight thousand dollars of said fund on deposit shall be paid to said executors or their attorneys.

"3. All the parties hereto assent and agree to the change of grade of Avenue A as ordained by ordinance passed January 13th, 1891, by the Council of Bayonne and to the contract made between the City of Bayonne and the Jersey City, Newark and Western Railway Company (now merged in the Lehigh Valley Terminal Railway Company), dated February 2d, 1891, which contract the Railway Company will forthwith proceed to carry into effect upon the discontinuance of said suit.

"4. If no further writ of *certiorari* shall be allowed before the first day of January, 1892, and if no application for a writ shall be then pending, said Railway Company shall pay to said Executors the balance of five thousand dollars on deposit, with the interest earned thereon, and with a further sum sufficient to make the total interest thereon six per cent. per annum from this date. If there is then pending any writ of *certiorari* or application, payment shall be deferred until the determination thereof. If the ordinance for change of grade shall be set aside, then the said fund on deposit shall be returned to the said Railway Company; should the ordinance be sustained, then the said

fund shall be paid to the said Trustees and Executors, with a sufficient additional sum to make the total interest earned thereon the sum of six per cent. per annum from the date hereof. If, however, the roadbed, pending any *certiorari*, shall be actually constructed and rails laid for traffic at a grade accommodated to that established by the ordinance of January 13th, 1891, and not to the prior established grade, in such case the payment of said deposit shall be made to the executors upon such construction.

"5. The company agrees that in case any assessments for said change of grade shall be made upon the lands of the estate of James Currie or Jeanette T. Imbrie over and above the awards which may be made to them for said change of grade, the said railway company will pay such excess of assessments.

"In witness whereof the said parties have executed these presents the day and year first above written."

Pursuant to that agreement the complainant forthwith deposited $13,000 to the credit of Messrs. Edwards and Corbin, and they at once paid to the defendants the sum of $8,000, and the suit of *certiorari* was discontinued and dismissed by order of the supreme court, entered by consent of parties, on the 3d of October, 1891. The complainant then commenced the active work of changing the grade of the street and the erection of abutments for the bridge, but were stopped before they had made much progress, by the intervention of a new litigant.

On the 31st of October, 1891, a third writ of *certiorari* was allowed and issued out of the supreme court on the prosecution of the board of chosen freeholders of the county of Hudson, by which the same ordinance was removed to the supreme court and work thereunder was stopped. In fact, the board of chosen freeholders had formally adopted Avenue A as a county boulevard and made it one hundred feet wide instead of seventy feet. Litigation followed under that *certiorari*, and on the 18th of February, 1892, the supreme court (*25 Vr. 293*) set aside the ordinance, with the result that all authority for the complainant to reduce the grade of the street and build its bridge at the desired height was destroyed.

The complainant removed the judgment of the supreme court, setting aside the ordinance in question, by writ of error to the court of errors and appeals, and then, on the 24th of March, 1892, made a settlement whereby it dismissed its writ of error and entered into an agreement with the board of chosen free-

holders by which the grade fixed by the ordinance of the common council of Bayonne of January 16th, 1891, was changed. The grade immediately under the railroad crossing was left substantially the same as that fixed by the common council, but the approaches to the railway bridge from each side were made a little steeper, so that for a considerable portion of the distance on one side there was about three feet less cut, and on the other side from one to two feet less cut in front of the lands of defendants. The width of the excavation, however, was one hundred feet instead of seventy; and provision was made for some sewers to be built at the expense of the complainant, in addition to those provided for in the contract with the city. Provision was also made for supporting columns of iron under the bridge, to be placed at the edge of the sidewalks, so that the actual span, instead of being one hundred feet, was sixty feet. The paving and flagging were substantially the same as in the contract between the complainant and the city. All the work was to be done by the complainant at its expense. The complainant also agreed to indemnify the county against all damages that it might be required to pay by reason of the adoption of the new grade and construction of the road thereon.

Under the statutory proceedings taken by the county to ascertain the damages resulting to the landowners by such change of grade and the taking of thirty feet of land for additional width, the defendants appeared and claimed damages by reason of the alteration of the grade, and also for the additional land taken, with the result that the commissioners appointed to ascertain such damages awarded them only nominal damages.

Thereupon the complainant demanded the sum of $5,000 standing in the name of the trustees, and the trustees not being agreed as to its right thereto this suit was instituted. The trustees were made parties defendant, but took no part in the litigation.

The defendants Currie, executrix, and Imbrie and wife answer and combine with their answer a cross-bill, in which they set up that the sum of $13,000 deposited was fixed upon as the amount of damages which would be actually inflicted upon the defendants' land by the change of grade, and that $8,000 of it was paid them

on that account, and that $5,000 was retained simply to insure the complainant against any further *certiorari* being issued by the defendants or any landowners similarly situated. It further states that at the time the agreement between the parties hereto of October 2d, 1891, was made it was understood that the authorities of Hudson county might object to the grade thereby established, and further that the complainant was not hindered by the *certiorari* of the board of freeholders, but continued the construction of its road without interruption, and that the agreement of October 2d, 1891, has been practically fulfilled by defendants, and that the work which the complainant was obliged to do under the contract with the county was no greater than that which it agreed to do under the previous contract with the city, and that it was not hindered and delayed in the prosecution of its work by the *certiorari* of the city, and has derived all the benefit under the contract of March 2d, 1892, that it ever expected to derive under that of October 2d, 1891. Hence, in equity, so they argue, the defendants' right to the fund is clear. The defendants rest their legal right to the $5,000 under this clause of the agreement:

"If, however, the roadbed, pending any *certiorari*, shall be actually constructed and rails laid for traffic at a grade accommodated to that established by the ordinance of January 13th, 1891, and not to the prior established grade, in such case the payment of said deposit shall be made to the executors upon such construction."

*Mr. Charles L. Corbin*, for the complainant.

*Mr. William D. Edwards*, for the defendants.

PITNEY, V. C.

By the fourth paragraph of the contract made October 2d, 1891, the fund of $5,000 now in controversy was to be paid to the complainant in case the ordinance of the city changing the grade of Avenue A should be set aside on *certiorari*, unless, pending the *certiorari*, the complainant's roadbed should be actually constructed and rails laid for traffic. It is admitted that the

ordinance was set aside on *certiorari* at the February Term, 1892, and that the roadbed had not then been constructed across the avenue, and that no rails had been laid for traffic, and in fact that no rails at all were laid or could be laid across Avenue A until some months afterwards, when they were laid, not under the protection of the ordinance and agreement of the city, but under a new agreement made by the complainant with the county freeholders. By the express terms of the contract between the parties, therefore, the complainant's right to the fund is established.

The defendants contend that they should receive this sum of $5,000 because they have actually suffered the damages and the complainant has obtained the advantages for which this $5,000 was to be paid. If this were the case it would not establish the claim of defendants or impair that of complainant to this fund. The defendants can have no claim at law or in equity upon the fund except by the contract under which it was deposited. Apart from the contract, the relation of defendants to the complainant is merely that both parties own land abutting on the same highway. The complainant applied to the chosen freeholders of the county, who controlled this highway, for a change of grade, and the chosen freeholders made the change. Defendants allege that they have been damaged by the change. If so, their remedy, if any, must be against the county unless the complainant has, by its agreement, placed itself under some liability for the damages to defendants. If such liability had been created, defendants could, of course, resort to an appropriate remedy to enforce it, but that would not establish their right to this fund. The money was put in the hands of the trustees, not in trust, to satisfy damages from change of grade, but to pay on certain contingencies. The contingency has happened which required the payment to complainant. The trustees can only pay the money strictly as the contract requires, and the court cannot divert it to other purposes, however meritorious. The trustees are mere depositaries; they hold the money on a special trust, to pay as the agreement stipulates, and, under such a special trust, the rule stated by Lewin is: "The duties thus

prescribed to him the trustee is bound strictly to pursue, without swerving to the right hand or to the left." *Lew. Trusts 572.*

If, however, the fund were placed at the full discretion of the trustees and of the court, to dispose of according to equity, as between these parties, the result would not be different.

It seems to me that the circumstances negative the allegation of defendants that the sum deposited with the trustees represented damages which the defendants would actually suffer by the proposed change of grade. It is not so stated in the contract, and the indications are the other way, for the fifth section provides that if any assessments are made against the defendants for benefits by reason of the proposed change of grade over and above the awards to be made to them for damages, the complainant shall pay such excess. Moreover, the complainant, in its contract with the city, had undertaken to pay all the expenses of the improvement under the sixty-second section (*P. L. of 1872 p. 717*) of the charter of the city. I am satisfied, from all the circumstances, that the payment was made simply to buy off the defendants' opposition. They were able to seriously embarrass and delay, if not to actually defeat, complainant's plan to so depress the avenue at the point in question as to enable it to build its road at the grade it desired and to avoid crossing the avenue at grade. Any considerable delay was a serious matter, resulting, as it must, in loss, in the meantime, of the use of the other parts of the road. The $5,000 here in dispute was retained as a guarantee not only against any further interference by *certiorari* on the part of the defendants or other persons similarly situate who might be influenced by the defendants, but also against the interference of the board of chosen freeholders of Hudson county, the danger of which, I am satisfied, was present in the minds of the parties when the contract was executed.

The avenue was little more than a paper street; the amount of travel upon it was but trifling; it had never been graded or curbed, and no buildings had been erected upon it in that neighborhood. Under these circumstances it is not surprising that the commissioners appointed under the proceedings of the board

of chosen freeholders awarded defendants nominal damages. Moreover, the supposed injury to the defendants' property was considerably less under the grade adopted by the board of freeholders than under that adopted by the city, and the defendants had the benefit of having a sewer constructed which would drain most of their land, without being subjected to assessments for the cost of it.

The act of April 7th, 1888 (*P. L. of 1888 p. 397*), under which the freeholders proceeded, provides, in its sixth, seventh and tenth sections, for the ascertainment and payment of all damages caused by reason of changes of grade such as were here made.   The language of the tenth section is :

"In case any grade shall be changed, compensation shall be made to the person injured, if any there shall be, by such altered grade, such injury to be ascertained in the same manner hereinbefore [sections 6 and 7] provided in the case of land taken."

With this provision in full view, complainant stipulated in its contract of March, 1892, with the freeholders to pay all damages which might be awarded to be paid by the county to any persons injured by the change of grade therein provided for.

The evidence shows that complainant feared that substantial damages might be awarded to defendants under this proceeding : also that it was liable to be disturbed in its work of constructing the sewer it had agreed to build in Fifty-ninth street, outside the jurisdiction of the county, and which was necessary in order to drain the boulevard at the low point immediately under the proposed bridge.   The land on each side of that part of Fifty-ninth street under which the sewer was to be laid belonged to defendants, and counsel for complainant feared that it had no right as against defendants to construct that sewer after the ordinances in question, which sanctioned that construction, had been set aside.   To provide against these two matters, viz., the possible award in favor of defendants, and their interference with the construction of the sewer, counsel for complainant, shortly after the execution of its contract with the county, approached defendants for a new contract with them, and submitted a draft of

one which its counsel thought it would enter into. This proposition was declined by defendants, but the unexecuted and unaccepted draft was set up by defendants in their answer and relied upon at the hearing as an admission by complainant of defendants' right to the fund in question. I do not think it is competent evidence for that or any other purpose, and admitted it subject to the objection of the complainant, and with the remark that I thought it was incompetent. But upon looking at it I find in it no more than an offer to pay the fund here in question to the defendants in full satisfaction of all damages which might be awarded to the defendants by reason of the change of grade provided for in the contract with the freeholders, provided that no further interference, by *certiorari* or otherwise, should be made with the work of complainant. I can find in this offer no admission of defendants' equity. It was, as before remarked, declined by defendants, and they afterwards went before the commissioners appointed under the act last cited and claimed damages.

An attempt was made to prove at the hearing that the defendants' claim for damages was so framed and pressed as only to ask for damages over and above the sum named in the agreement of October 2d, 1891, and that the nominal sums awarded were, in fact, just so much over and above that sum. I think the attempt failed. Notice was given in writing to the commissioners by the defendants, that they did not waive their contract rights by their appearance, but there was no waiver by defendants of their right to damages from the county, and there is nothing on the face of the awards which are in evidence to indicate that any such matter was considered by the commissioners. Nor does it appear that this notice was brought to the attention of complainant, or that the commissioners could have taken into consideration the contract of October 2d, 1891, or that it was ever produced before them. The statute under which the commissioners were appointed prescribed their duties, and conferred no power to pass upon this contract.

The principal reliance of defendants was upon the last clause in the fourth section of the contract, which provided as follows:

"If, however, the roadbed, pending any *certiorari*, shall be actually constructed and rails laid for traffic at a grade accommodated to that established by the ordinance of January 13th, 1891, and not to the prior established grade, in such case the payment of said deposit shall be made to the executors upon such construction."

The purpose of this clause was probably to provide for the contingency that the apprehended new writ of *certiorari* might be allowed without a stay or that some fresh statutory authority might be obtained, and that, therefore, the complainant might be able to construct its bridge across the street, and might venture to do so without suffering the delay apprehended from the pendency of a *certiorari* suit.

It is contended by defendants that the work of complainant was not seriously interfered with by the successful *certiorari*, and that it was able to prosecute its work with as much speed and dispatch as if the *certiorari* had not been brought and allowed. That is true as to some parts of their road, but not as to the one hundred feet in length which included Avenue A, and this is the very point where the complainant apprehended the delay which its contract was made to escape. At that point it could not place its bridge without first excavating the street and reducing the grade so as to permit the travel to pass under, and it could not reduce the grade without municipal authority. It commenced the work of excavation at that point immediately after the dismissal of defendants' *certiorari* on October 3d, 1891, but was stopped promptly by an injunction at the suit of the county, and then on October 31st, finally stopped by the allowance of the *certiorari* prosecuted by the county. At that time only a trifling amount of excavation had been effected, and the work at that point stood in that condition until after the agreement with the freeholders of March 24th, 1892, when it was pushed and progressed so rapidly that the bridge was placed on the piers in June. Prior to that, of course, no rails were or could be laid across Avenue A, and none were laid for some distance on either side of it. These facts, of course, exclude the idea of any literal or substantial fulfillment of the condition of the contract now under consideration.

Defendants say that the spirit of the clause is that if there is no substantial delay caused by the *certiorari* then the $5,000 should be paid over. But the *certiorari* suit not only delayed but wholly defeated the change of grade which the contract was made to protect, and the delay caused by the *certiorari* would have been presumably perpetual but for the compromise with the county and the contract with it of March, 1892, by which the complainant procured a different change causing less excavation in front of the lands of defendants, and came under new obligations varying from those contained in the contract with the defendants.

The completion of the road was not, in fact, accomplished pending the *certiorari* and in spite of it, hence the case is not brought within the proviso in question. The contract of March, 1892, between the complainant and the county provided for the discontinuance of all suits between the parties, so that the *certiorari* could not be considered as still pending, even if a writ of error could be considered as reviving the ordinance during the suit after the final judgment of the supreme court, February 18th, 1892.

The result is that the evidence introduced by the defendants to show that complainant prosecuted its work after the *certiorari* with industry and without interruption, makes against the defendants rather than in their favor, since it shows the good faith of complainant in prosecuting its work as rapidly as possible. The difficulty in the way of defendants is that proceedings under the *certiorari* did not continue long enough to fulfill the terms of the clause in question; the roadbed was not actually constructed and the rails laid for traffic pending any *certiorari*.

I think the complainant is entitled to the fund.

The trustees have each answered and must be paid their costs. Such costs were rendered necessary by the refusal of the real defendants to consent to the payment of the fund to complainant. The trustees may retain their several costs out of the fund, and the defendants Currie's executors and Imbrie must pay complainant its costs, including the amount so retained by the trustees. I will so advise.