GLADYS MORTIMER, PLAINTIFF, v. CARL R. KEPPLER, DEFENDANT.

Decided October 19, 1925.

Malpractice—Erroneous Treatment Resulting in Loss of Leg— Defendant Alleges Several Respects in Which Verdict is Against Weight of Evidence, None of Which Are Sustained—No Error Found in Charge, Either As To Nature of Operation or to Damages—Misstatement As To Age of Plaintiff Not Material.

On rule for new trial.

Before Gummere, Chief Justice, and Justices Kalisch and Campbell.

For the plaintiff, *Vanderbilt & Hedden.*

For the defendant, *Wall, Haight, Carey & Harlpence.*

Per Curiam.

This is an action for damages for alleged malpractice, and plaintiff has a verdict for $8,000.

Defendant has a rule to show cause why the verdict should not be set aside.

The complaint was originally in two counts. The first charging negligence in an operation and treatment thereafter resulting in the necessity of an amputation of a portion of plaintiff's right leg, and the second charging negli-

gence in the care and treatment of plaintiff after such operation requiring a second amputation of a further portion of plaintiff's right leg.

At the opening of the trial plaintiff was permitted to amend the complaint by adding a third count alleging an express contract to effect a cure, and charging a breach thereof.

Defendant answered denying all negligence and also denying an express contract to effect a cure and any breach thereof.

Plaintiff, at the age of ten years, became afflicted with tuberculosis of both hips and was treated for a period of two years at St. Mary's Hospital, in Brooklyn, and when she left the hospital, although she used crutches, she was cured of the active tubercular condition. About six months later she was able to discard the crutches and was able to walk with a slight limp. She seems to have been able to engage in play and other activities with other children, and after finishing her studies in grammar school she entered high school, traveling from her home in Brooklyn to Bay Ridge by trolley. Thereafter she obtained employment with the Brooklyn Rapid Transit, requiring her to walk around from department to department on different floors of the building. Subsequently, the family moved to Belleville and she obtained employment with the Commercial Casualty Company, in Newark. She traveled to and from her work daily by trolley.

The testimony would indicate that in 1921 she was a healthy young woman except that she had complete ankylosis of her left hip and partial ankylosis of the right and a misplacement of the right leg.

In the latter part of 1921, plaintiff, learning that the eminent surgeon, Dr. Adolph Lorenz, was conducting a clinic in Newark, she obtained a letter from the secretary of Senator Frelinghuysen to the defendant, requesting him to bring plaintiff's case to the attention of Dr. Lorenz and secure her admission to Dr. Lorenz's clinic, which was held at the office of defendant.

Plaintiff went to defendant with the letter on December 26th, 1921. Defendant told her that her condition was of such a minor character as to make it unnecessary for her to go to Dr. Lorenz, but that he could perform the operation himself.

Plaintiff told defendant that she had been treated, at the age of ten, in St. Mary's Hospital, Brooklyn, by Dr. Hatch, for hip trouble, and that she was now eighteen years of age.

Defendant directed her to have an X-ray made of her hips, which she did, and returned with her mother to defendant's office in January, 1922. After examining the X-ray defendant told them he would manipulate the right leg and would have to use a chisel and hammer on the left; that the operation was a minor one; that plaintiff would have to spend five days in the hospital, would be able to go back to work in two weeks, entirely cured and able to walk as well as he walked.

On February 17th, 1922, defendant operated on plaintiff. Immediately thereafter she was in intense pain. Subsequently, her right foot and lower leg became gangrened, and on April 1st, 1922, her right leg was amputated at a point just above the ankle. The stump did not heal, and again, on November 1st, 1922, there was a further amputation to a point just below the knee. Plaintiff, although giving her age to defendant as eighteen years, was at the time about twenty-four and one-half years old. This seems not to have been a deliberate misstatement, but due to lack of knowledge and confusion as to her age.

Defendant argues that the verdict is against the weight of the evidence because—

(a) In detailing to the defendant doctor the history of her condition prior to the operation she misinformed him as to her age—giving it as eighteen, whereas she admitted the fact that she was over twenty-four and one-half years of age, and as a result his diagnosis was based on the false assumption that the condition of her hips had endured for six and one-half years less than was the case.

(b) The operation which the defendant performed was a manipulation technically known as modelling redressment, and was not the operation of brisement force.

(c) The plaster cast was not the cause of the circulatory disturbance.

(d) The weight of the evidence is that there was some injury either to the femoral artery or to a large blood vessel.

(e) The weight of the evidence was that there was no express contract to effect a cure.

As to misstatement of age, there is ample evidence warranting a finding that the difference of six and one-half years, was immaterial.

Our consideration of the testimony leads us to the conclusion that the verdict is not against the weight of the evidence.

Next, defendant urges error in the charge in the following language:

"The operation being a so-called bloodless operation for the purpose of correcting an ankylosis or a partial ankylosis or stiffening of the right hip joint."

It is urged that this was misleading to the jury because the operation was to obtain a better position of the right leg and contemplated the occurrence of ankylosis in the right hip.

But we think it cannot be said that the jury was misled. When the whole charge is read, reasonable men could not have been misled nor could they in anywise have misunderstood.

Again, that the charge as to diagnosis was prejudicial because it left the jury to say whether the diagnosis was wrong. The portion of the charge complained of is: "As to the matter of diagnosis—if you find that the defendant in this case did not use reasonable skill and diligence in diagnosing the plaintiff's ailment, and that this error in diagnosing led him to perform an operation which was improper under the circumstances, and that this operation resulted in an injury which brought on a gangrenous condition in the leg, necessitating the amputation of the lower portion, your verdict should be for the plaintiff  *  *  *."

There was a question as to whether the diagnosis was Perthe's disease, under which an operation could safely be performed, while if tuberculosis was the original cause of the hip trouble then such opeartion could not be safely performed. Under such circumstances the charge was proper.

.Finally, the court permitted plaintiff's counsel, in opening to the jury, to make statements indicating an attempt by the defendant to compromise the cause of action, which were highly prejudicial to the defendant.

The objection made to the opening was ineffective. Mistrial is discretionary.

Proper practice is to request court to instruct jury against improper remarks and upon court's refusal to take an exception thereto. *Smith* v. *Brunswick Laundry Co.*, 93 *N. J. L.* 436.

As to alleged incompetent evidence we think it was competent.

It was not shown to have been made without prejudice; and was made before action commenced and not at solicitation of plaintiff, but of defendant.

The rule to show cause is discharged, with costs.