39 N.J. Super. 92 (1956)
120 A.2d 655
WINFIELD MUTUAL HOUSING CORPORATION, A CORPORATION, PLAINTIFF-RESPONDENT,
v.
MIDDLESEX CONCRETE PRODUCTS AND EXCAVATING CORPORATION, A CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 30, 1956.
Decided February 10, 1956.
*94 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Melvin J. Koestler argued the cause for defendant-appellant (Messrs. Koestler & Koestler, attorneys).
Mr. Morris Spritzer argued the cause for plaintiff-respondent (Mr. Abe P. Friedman, attorney).
The opinion of the court was delivered by CONFORD, J.A.D.
This was an action by the plaintiff (hereinafter referred to as "Winfield" or "owner") for damages ensuing from alleged breach of contract by defendant (hereinafter referred to as "Middlesex" or "contractor") in the performance of an agreement to construct 1,240 concrete porch additions to dwellings of the owner for the price of $79,650. Defendant counterclaimed for payment of moneys due for 312 of the porches actually erected and for damages for alleged breach by the owner of the contract. At the trial in the Law Division a jury returned a verdict for plaintiff on the complaint in the amount of $11,500 and for the defendant on the counterclaim for $16,865, apparently representing the contractor's bill of $19,365 at the contract unit prices for the porches constructed, less an abatement of $2,500 for deficiencies in performance. This appeal by the contractor from the judgment entered on the verdicts stated raises a number of assignments of error by the trial court, *95 but our determination will require disposition only of the points that the court erred in denying defendant's motions for dismissal and for judgment as to plaintiff's claim and for judgment on the defendant's counterclaim for the full amount sought to be recovered for the completed porches.
The material provisions of the contract, entered into July 7, 1952, were these. Unit prices were specified for the various porches on the basis of size and incidence and number of steps. The porches were to replace preexisting wooden porches. Payment was to be "calculated by multiplying the number of units completed to the satisfaction of the Corporation [owner] by the unit price." Article 5 of the contract reads:
"The contract work will be inspected by the Winfield Mutual Housing Corporation, and will be rejected if it is not in conformity with the contract provisions. Rejected work shall immediately be corrected by the Contractor. When the work is substantially completed, the Contractor shall notify the Winfield Mutual Housing Corporation in writing that the work will be ready for final inspection on a definite date, at least 10 days thereafter, which shall be stated in such notice."
Under Article 9 partial payments were to be made as the work progressed, at the end of each calendar month, on estimates by the owner, subject to a 10% withholding until final completion and acceptance of all work. A provision concerning time for completion is not involved in this controversy. The only provision relative to specifications which is material on this appeal is the requirement in the contract drawings for foundation piers of a depth of two feet six inches on porches having steps. A dispute over the sufficiency of the cement mix was determined by the trial court in favor of defendant and does not concern us on this appeal.
The contractor began the work on July 28, 1952 and the owner had it inspected by an employee, Hall, until the latter's illness on August 19, 1952. He was succeeded by Orsini, a maintenance foreman, until October 6, 1952. Then Hall resumed his duties as inspector and continued as such until November 11, 1952, when the owner by letter directed the contractor to stop "until further notice, or indefinitely, by *96 reason of the fact that reports on our inspections as to materials and workmanship have not been favorable." The proofs show that Winfield's primary and only real complaint in this regard was that 195 of the 312 porches constructed by Middlesex had foundation piers less than 30 inches in depth. There is evidence that Winfield's executive director, Goldberg, complained to the contractor's president, Neiss, about the piers in August, 1952, yet subsequently wrote the latter to put more men on so that the job could go faster. Neither Goldberg nor either of the owner's inspectors ever rejected any of the porches or requested that the work on any of them be redone. Orsini explained that "we [owner] wanted to get the job done and so tried to allow as much leeway as possible"; also that he allowed a shallower foundation than 30 inches when he was satisfied the pier was "down to rock or good hard surface." It is undisputed that from October 6, 1952 until the stoppage on November 11 Middlesex constructed 54 porches in full and strict compliance with the contract, as evidenced by Hall's records and acknowledgment at the trial.
The contractor made demand for payment for the work it had completed but was never paid anything. There were conferences between the parties looking toward the possibility of adjustment of the differences and resumption of the work, but nothing came of them. There is no evidence that Winfield at any time called upon Middlesex to continue performance of the contract. Winfield tells us that this was because the defendant expressly refused to resume the performance of the contract unless it was paid in full without abatement for the deficiencies aforementioned and subject to the understanding that the porches to be erected would be "good porches" and not necessarily in strict compliance with specifications. We cannot find plaintiff's contention substantiated in the record. There could not be a refusal in the absence of a request, express or implied, for performance, and there is not a shadow of evidential support for the existence of such a request. The letter by Neiss of June 22, 1953, relied upon by plaintiff, was only a strong statement of justification *97 for defendant's demand for payment for the work completed and contained a separate voluntary expression of willingness to continue with the contract subject to cooperation by plaintiff in respect to a work schedule. The letter did, however, impliedly withdraw defendant's offer, by letter of June 10, 1953, to allow an abatement of $2,500 against the contract unit price of $19,430 for the porches already completed.

I.
We direct our attention initially to the appeal in relation to the counterclaim. It is defendant's position that it was entitled to judgment as a matter of law for the full amount of its claim on the ground, inter alia, that there was no competent proof of damage to plaintiff in the divergence between strict performance of the stipulations and the performance rendered by the contractor. It is well established that where there is substantial performance of a building contract, even though attended by minor shortcomings, the contract price may be recovered, less a fair allowance to the owner to make good the defects. Feeney v. Bardsley, 66 N.J.L. 239 (E. & A. 1901); Borus Waton, Inc., v. Henn, 108 N.J.L. 514, 516 (E. & A. 1932); Dyer v. Lintz, 76 N.J.L. 204 (Sup. Ct. 1908); Globe Home Improvement Co. v. Michnisky, 120 N.J.L. 233 (Sup. Ct. 1938); cf. R. Krevolin & Co., Inc., v. Brown, 20 N.J. Super. 85 (App. Div. 1952); Palmeri v. Albanese, 12 N.J. Super. 338, 342 (App. Div. 1951). The burden of establishing the amount of the allowance for defective work in such cases falls upon the owner. Globe Home Improvement Co. v. Michnisky, supra; and see Dyer v. Lintz, supra (76 N.J.L., at page 206); Wilkinson v. Orange Mountain Land Co., 103 N.J.L. 683, 689 (E. & A. 1927).
Our consideration of the matter before us must postulate substantial performance by defendant since plaintiff does not appeal the award by the jury to defendant on the counterclaim  a verdict which emanated from the trial court's instruction to the jury that defendant was entitled to recover *98 on the counterclaim, subject to abatement for defective work. Our independent examination of the record leads to concurrence with the conclusion by the trial court that substantial performance was rendered by defendant until the enforced stoppage. There was no evidence submitted at the trial  almost three years after the porches were built  that they were not substantially and efficiently serving the purpose for which the owner intended them. We are thus led to the question as to whether competent proofs support the abatement of $2,500 allowed by the jury or the denial by the court of the motion for judgment on the counterclaim to the extent of the full amount due, on the contract unit basis.
Aside from the defendant's letter offering a compromise abatement, to which we shall address our attention presently, there was nothing in the evidence upon the basis of which the jury could, short of sheer speculation, determine how much money it would take "to make good the defects," Dyer v. Lintz, supra (76 N.J.L., at page 206), assuming the undemonstrated premise that the porches were less valuable or serviceable as constructed than as strictly required to have been under the contract.
We turn to the letter-offer of June 10, 1953. In this, written after and in reference to a conference at which such a proposal had been informally discussed, the contractor wrote: "* * * we herewith confirm our compromise offer to allow you the sum of $2,500 to be credited against our present bill of $19,430.00 * * * for work completed." The letter also dealt with a resumption of contract performance. The trial court denied a motion by defendant to expunge the letter from the evidence on the ground the offer had not been accepted and he charged the jury it could consider the letter as evidence of the amount of abatement allowable to plaintiff, defendant again objecting. We are thus brought to consideration of a legal question which the New Jersey authorities leave in some doubt, i.e., the extent to which, if at all, a proposal of compromise of a pending controversy constitutes competent evidence of the existence or amount of liability of the offeror in reference thereto. There *99 has been frequent citation of the dictum in Richardson v. International Pottery Co., 63 N.J.L. 248, 249 (E. & A. 1899) to the effect that:
"It is well settled that such admissions are competent unless it is expressly stated that they are made without prejudice, or unless the party making them has been led to believe by the conduct of the adversary that a compromise may probably be effected."
Some subsequent decisions have tended to make the use of the phrase, "without prejudice," the key to exclusion of such evidence, otherwise apparently assumed competent. Mortimer v. Keppler, 3 N.J. Misc. 1036, 130 A. 547, 549 (Sup. Ct. 1925); Somerville Water Co. v. Borough of Somerville, 78 N.J. Eq. 199, 202, 203 (Ch. 1911); Beachner v. Jengo, 89 N.J.L. 325 (E. & A. 1916). This line of cases does not deserve a higher rank than is warranted by appraisal of the pertinence of the rule stated to the factual situations involved in the cases. The Richardson and Beachner cases, for example, do not actually concern offers of compromise of a pending controversy but only collateral admissions, implied, in the Richardson case, from a proposal made long prior to the controversy in litigation, and by express statement in the Beachner case. See Bell, Admissions Arising out of Compromise  Are they Irrelevant?, 31 Texas L. Rev. 239, 254 (1953). The earlier New Jersey cases uniformly excluded offers of compromise, sometimes on the unreal ground that the offer was not accepted (if it were, entirely different legal questions would be presented; see Union Locomotive & Express Co. v. Erie Railway Co., 37 N.J.L. 23, 28, 29 (Sup. Ct. 1874)), Miller v. Halsey, 14 N.J.L. 48, 51 (Sup. Ct. 1833); Lehigh Valley Terminal Ry. Co. v. Currie, 54 N.J. Eq. 84, 93, 94 (Ch. 1895), affirmed 54 N.J. Eq. 700 (E. & A. 1896); on other occasions on the basis of factual immateriality, Crowther v. Lloyd, 31 N.J.L. 395, 398 (Sup. Ct. 1866); Wrege v. Westcott, 30 N.J.L. 212, 214 (Sup. Ct. 1862).
Three philosophical approaches have been taken in the consideration of this problem in the law of evidence. The *100 Wigmore position is that offers of compromise are excluded because not factually relevant; that they do not imply a belief (and, consequently, an admission by implication) on the part of the offeror that the adversary's claim is well founded, but rather that the further prosecution of the claim is preferably avoided by a purchase of the offeror's peace. 4 Wigmore on Evidence (3d ed. 1940), § 1061, p. 28. The second view presumes relevance in such offers and requires the offeror to contract for evidential immunity by such cabalistic formulae as "without prejudice." This contractual theory was, as noted, fostered in New Jersey by the statement in the Richardson case. It has been consistently applied by the English courts. LaRoche v. Armstrong, [1922] 1 K.B. 489; Wallace v. Small, M. & M. 496, 173 Eng. Rep. 1219 (C.P. 1830); Stotesbury v. Turner, [1943] 1 K.B. 370. Aside from other objections to its perpetuation as a criterion it puts an entirely unwarranted premium on familiarity with a legal nicety not commonly encountered among laymen. Admissions Arising out of Compromise  Are they Irrelevant?, supra (31 Texas L. Rev., at page 248). The third, and presently most favored, viewpoint, is that which holds for exclusion on the basis of privilege, a rationale conceived in the social desirability of promoting settlements of controversies over disputed claims. McCormick, Law of Evidence (1954) §§ 76, 251, pp. 157, 539; McCormick, The Scope of Privilege in the Law of Evidence, 16 Texas L. Rev. 447, 457 (1938). This point of view was indirectly supported by the former Court of Errors and Appeals in Rynar v. Lincoln Transit Co., Inc., 129 N.J.L. 525, 528, 529 (E. & A. 1942), wherein, in maintaining that the settlement of a claim was not admissible as evidence of liability for negligence, it was said:
"* * * The law favors compromises and because it favors them does not permit the bare fact of their occurrence to be interpreted as a guilty admission. It is clear  and there is no contention otherwise  that the disputed evidence of settlements was not admissible for the purpose of building up a case of liability against the bus company or its driver."
*101 The viewpoint last above adverted to has been adopted by the National Conference of Commissioners on Uniform Laws in the form of its proposed Uniform Rules of Evidence, Rules 52 and 53. Rule 52, in part, reads:
"Evidence that a person has, in compromise * * * offered * * * money, or any other thing, act or service to another who has sustained or claims to have sustained loss or damage, is inadmissible to prove his liability for the loss or damage or any part of it."
No contrary decision by a New Jersey court of last resort precludes our holding the rule, as thus formulated, to be expository of the law of this state in application to the case before us. Conceiving the rule to be salutary, we herewith do so hold. See Harr v. DuBois, 126 N.J.L. 343, 344 (E. & A. 1941). Implicit in the rule is the principle that such a compromise offer cannot constitute evidence of the pecuniary amount of an asserted liability of the offeror. See 31 C.J.S., Evidence, § 285, pp. 1038, 1041; National Fire Ins. Co. of Hartford, Conn., Inc. v. Cannon & Byers Millinery Co., Inc., 200 Ky. 655, 255 S.W. 154, 155 (Ct. App. 1923).
It results that the $2,500 offer of abatement submitted by defendant by way of compromise did not constitute competent evidence of the existence or amount of loss on the part of plaintiff ensuing from defendant's departures from the strict contract terms. There being, as indicated above, no other sufficient evidence thereof, the trial court erred in refusing to enter judgment for defendant on its counterclaim for the sum of $19,365.

II.
We come to the matter of plaintiff's claim for alleged breach of the entire contract by defendant, on which it had judgment below for $11,500, representing the purported difference between the estimated cost of completion of the remaining porches and the aggregate contract unit prices therefor. We conclude that the refusal of the trial court to grant defendant's motion for judgment as to this claim was *102 erroneous. It is our judgment that the record herein requires the conclusion that the contractor's failure to complete performance of the contract was the consequence of the owner's unwarranted putting it off the job, not the manifestation of any repudiation of its contractual undertaking to build 1,240 porches.
At the time of the stoppage of the work by order of the owner, defendant had completed some 312 of the porches, the last 54 of them in concededly strict compliance with the contract. There is no indication that, if not interrupted, the contractor was planning anything less than full performance as to the remainder of the work. We have already stated our conclusions adverse to the contention of plaintiff that it desired resumption of performance by defendant but that the latter refused to continue unless it was paid for prior work without abatement and subject to the understanding that it would not render strict performance on the remaining work. The record did not in our opinion make for a jury issue as to this contention.
Conceding that the contractor's performance here prior to stoppage was not strict, but only substantial, the owner was not perforce thereof entitled to treat the contract as totally breached so as to found an action for damages on the entire contract. 3 Corbin on Contracts (1951) § 700, pp. 759, 760, 761. Ordinarily the right to claim a breach of the whole contract depends, not on whether the acts constituting the breach were departures from the contract terms, but whether they were inconsistent with an intention to be further bound by its terms or upon whether the breach was such as to defeat the purpose of the contract. 12 Am. Jur., Contracts, § 343, p. 901. Cf. Restatement, Contracts, § 313, comment c. The decisive question here is whether defendant is shown to have "been guilty of substantial breaches of essential obligations under the contract." Cf. Frank Stamato & Co. v. Borough of Lodi, 4 N.J. 14, 21 (1950); see Blackburn v. Reilly, 47 N.J.L. 290, 308, 309 (E. & A. 1885). In our view the evidence in support of the affirmative of that proposition in the present case did not warrant a *103 submission of the issue to the jury. Defendant has contended that plaintiff effectively waived any departures from the contract by the contractor, but we find it unnecessary to pass on that assertion. The trial court should have held as a matter of law that defendant was never in breach of the contract as an entirety and pursuant thereto granted defendant's motion for judgment of dismissal. These dispositions make it unnecessary to consider the other points of error argued by defendant.
Reversed and remanded for entry of judgment for the defendant on the complaint and in favor of the defendant on the counterclaim for $19,365 together with interest.