217 N.J. Super. 580 (1987)
526 A.2d 719
NICOLE WYATT AND DYLAN HENSON, INFANTS BY THEIR GUARDIAN AD LITEM, ELIZABETH CALDWELL, ELIZABETH CALDWELL, INDIVIDUALLY, BARBARA CREMEAN AND MICHAEL CREMEAN, PLAINTIFFS-APPELLANTS, CROSS-RESPONDENTS,
v.
SANDRA WYATT, DEFENDANT-RESPONDENT, CROSS-APPELLANT, AND CHARLES DEYOUNG, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued April 7, 1987.
Decided May 13, 1987.
*583 Before Judges MICHELS and SKILLMAN.
Cheryl A. Bukala argued the cause for appellants (Ann Bernice Segal, attorney; Cheryl Bukala, on the brief).
Robert B. Kugler argued the cause for respondent (Moss, Powers & Lezenby, attorneys; Robert Kugler, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
This is an appeal from a jury verdict of no cause in an automobile negligence case. We conclude that the trial judge committed prejudicial error with respect to three evidence rulings during trial. Therefore, we reverse and remand for a new trial.
Defendant Sandra Wyatt was operating an automobile in which her children, Nicole Wyatt and Dylan Henson, and Barbara Cremean were passengers. The automobile went through a red light and collided with a truck being driven by codefendant Charles DeYoung. This suit was brought on behalf of the three passengers against Wyatt and DeYoung.[1]
The only eyewitness testimony concerning the accident was by Cremean and Sandra Wyatt. Cremean said that she and Wyatt were talking. She first noticed that the light was red as they began to enter the intersection. She then said to Wyatt, "what are you doing?" Wyatt applied the brakes and her car fishtailed into DeYoung's truck.
On the other hand, Wyatt testified that she observed the light turn red when she was a substantial distance from the intersection *584 and applied the brakes when she was still 60 to 70 feet away. However, the brakes failed to respond and she was unable to stop her car or to avoid DeYoung's truck. The verdict seems to indicate that the jury accepted Wyatt's version of the accident.

I
Over plaintiff's objection, the trial judge permitted Wyatt to testify that her automobile, including the brakes, was serviced by Firestone the day before the accident, that the total estimate of body damage to the automobile from the accident was $843, and that Firestone paid that full amount to Wyatt and her husband after the accident in exchange for a release from liability. However, the trial judge, in an inconsistent ruling, subsequently sustained an objection to the admission into evidence of the property damage estimate and release. And in his instructions to the jury the trial judge said:
One other thing. There has been some testimony with respect to Mrs. Henson receiving a certain amount of money from Firestone who is not a party to this suit. The fact that she received payment from Firestone is not evidence per se that the brakes failed. So that you may not consider that as evidence with respect to the issue of whether her brakes failed. You may, of course, obviously consider Mrs. Henson's testimony that her brakes failed and she complained to Firestone and she said it was supposed to have been repaired the day before the accident. That is a question of credibility which you have to of course assess.
Thus, while the trial judge instructed the jury that the testimony concerning Firestone's payment to Wyatt and her husband was not "evidence per se," this testimony was not stricken from the record and the jury may very well have understood that it could be considered in assessing the credibility of Wyatt's testimony concerning the alleged brake failure.
Plaintiffs argue that evidence of the settlement with Firestone was inadmissible on three separate grounds: (1) it was hearsay and therefore inadmissible under Evidence Rule 63; (2) it was evidence of a settlement of litigation and therefore inadmissible under Evidence Rule 52 or (3) any marginal relevancy *585 of the evidence was substantially outweighed by the risk of undue prejudice and therefore it was inadmissible under Evidence Rule 4(b). We conclude that this evidence was not hearsay and that it was not inadmissible under Rule 52. However, we also conclude that this evidence had little or no probative value and that there is a substantial danger it was assigned undue weight by the jury. Therefore, the trial judge abused his discretion in not excluding it pursuant to Rule 4. Furthermore, we are convinced that the prejudice to plaintiffs from the admission of this evidence was not cured by the trial judge's subsequent ambiguous instructions to the jury.
Hearsay is defined by Rule 63 as "a statement offered to prove the truth of the matter stated which is made other than by a witness while testifying at the hearing." A "statement," as that word is used in Rule 63, is "... not only an oral or written expression but also nonverbal conduct of a person intended by him as the substitute for words in expressing the matter stated." Evid.R. 62(1). Clearly, Firestone's payment to Wyatt was not "an oral or written expression." It was instead "nonverbal conduct." However, this conduct was not "intended by [Firestone] as the substitute for words." It was not like a person shaking his head up and down instead of saying "yes," see State v. Simmons, 52 N.J. 538, 541 (1968), cert. den. 395 U.S. 924, 89 S.Ct. 1779, 23 L.Ed.2d 241 (1969), or pointing to the person being identified in a lineup instead of saying, "that's the man," U.S. v. Caro, 569 F.2d 411, 416 n. 9 (5th Cir.1978). Firestone's payment of money to Wyatt was not intended as a communication but rather was action designed to resolve any claim she might have. Therefore, that action was not a "statement" within the meaning of Rule 62(1) and hence not excludable from evidence as hearsay pursuant to Rule 63.
Evidence Rule 52 provides in relevant part:
Evidence that a person has, in compromise or from humanitarian motives, furnished or offered or promised to furnish money, or any other thing, act or service to another who has sustained or claimed to have sustained loss or *586 damage, is inadmissible to prove his liability for the loss or damage or any part of it.
There are two basic rationales for the exclusion of evidence of settlement discussions and settlements. One, advocated by Professor Wigmore, "... is that offers of compromise are excluded because not factually relevant; that they do not imply a belief (and, consequently, an admission by implication) on the part of the offeror that the adversary's claim is well founded, but rather that the further prosecution of the claim is preferably avoided by a purchase of the offeror's peace." Winfield Mutual Housing Corp. v. Middlesex Concrete Products & Excavating Corp., 39 N.J. Super. 92, 100 (App.Div. 1956); see 4 Wigmore, Evidence (Chadbourn rev. 1972), § 1061. The other, advocated by Professor McCormick, is "the social desirability of promoting settlements of controversies over disputed claims." Winfield Mutual Housing, supra, at 100; see McCormick, Evidence (3 ed. 1984), § 274; see also Rynar v. Lincoln Transit Co., Inc., 129 N.J.L. 525, 529 (E. & A. 1943).
Evidence Rule 52 is taken from the Uniform Rules of Evidence, which adopt the McCormick view, that is, that evidence of settlements is excluded in order to promote settlements. Winfield Mutual Housing, supra, 39 N.J. Super. at 101. Consequently, Rule 52 did not bar evidence of the settlement between Firestone and Wyatt. The admission of this evidence could not undermine the policy of encouraging settlements, because it was not offered against one of the parties to the settlement. Rather, it was Wyatt herself, one of the parties to the settlement, who offered the evidence to show that Firestone was legally responsible for the accident and hence that Wyatt was not. Stated another way, since Firestone was not a party to the lawsuit and hence could not be held liable, evidence of the settlement was not offered "to prove [Firestone's] liability for the loss" within the intent of Rule 52. See McCormick, supra, at 813 n. 23 ("A settlement which is offered as proof of the liability of a third party, arising out of *587 the transaction in suit, is not within the privilege since the evidence will not harm the parties to the compromise.")
Nonetheless, this evidence should have been excluded because it had little or no probative value with respect to Firestone's responsibility for the accident and yet had an inherent capacity to unduly influence the jury. Rule 4(b) provides that "[t]he judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will ... create substantial danger of undue prejudice or of confusing the issues or of misleading the jury." Firestone settled with Wyatt and her husband by paying them $843 for the property damage to their car. The record does not indicate the reason Firestone made this payment, although the release does contain the standard recitation that the payment by Firestone "is not to be taken as an admission of liability." However, it is as logical to infer that Firestone simply desired to avoid litigation by the payment of a small sum of money as that it acknowledged any responsibility for the accident. See Wigmore, supra, § 1061 at 36 ("the offer implies merely a desire for peace, not a concession of wrong done"). Although lack of relevancy is not the basis for the exclusion of evidence of a settlement under Rule 52, we conclude that the simple fact that Firestone paid a small sum of money to Wyatt had so limited probative value with respect to the condition of Wyatt's brakes at the time of the accident that it should have been excluded under Rule 4.
This conclusion is squarely supported by the one decision which we have located dealing with the issue. In Esser v. Brophey, 212 Minn. 194, 3 N.W.2d 3 (Sup.Ct. 1942), a defendant in an automobile case sought to introduce evidence that the driver of another car involved in the accident had paid for the damages to his car, thereby supporting an inference that the other driver and not defendant was responsible for the accident. In concluding that the admission of this evidence constituted reversible error, the court said:

*588 Where, as here, there was no admission, but a compromise and settlement of a disputed claim, an inference of admission of liability is not permissible. [3 N.W.2d at 5].
The court also observed that "... such evidence is inherently prejudicial notwithstanding an instruction ... limiting its purpose and effect."
We conclude that admission of evidence of the Firestone settlement with Wyatt had an unfairly prejudicial impact upon plaintiffs' case and requires a reversal. Although the trial judge ultimately instructed the jury that this settlement was not "evidence per se," he did not tell them it could not be considered for any purpose. Indeed, the confusing and contradictory statements concerning the settlement made by the judge during trial and in his instructions likely served to emphasize it in the minds of the jury. Furthermore, defense counsel made the settlement one of the centerpieces of his summation, saying:
... Firestone ought to be here in this courtroom. I don't control the lawsuit. I don't represent the plaintiffs and I don't decide who is going to get sued in this case. If Firestone is the one at fault  you don't have to take my word for it. You heard the testimony, uncontradicted testimony that Firestone paid every penny of Mrs. Henson's damage to her car, every single penny. Now, what does that tell you?
Hence, there is a substantial likelihood the jury was seriously misled by the evidence concerning the Firestone settlement with Wyatt.[2]

II
Plaintiffs called Barbara Cremean in rebuttal. The following then occurred during her direct examination:

*589 MS. BUKALA: Was there any conversation between you and Mrs. Henson?
MR. KUGLER: Judge, I'm going to object. I don't think this is a proper rebuttal.
THE COURT: I don't think this is a proper rebuttal.
Ms. Bukala, is this a rebuttal?
MS. BUKALA: Yes, your Honor. It's rebuttal.
THE COURT: As to what?
MS. BUKALA: To the testimony that was offered by Mrs. Henson.
THE COURT: As to what happened after the accident? How is this going to rebuttal?
MS. BUKALA: It is the whole incident with the brakes and Firestone.
THE COURT: You got to be specific. That question is improper.
MS. BUKALA: Do you want me to do a side bar?
THE COURT: No. Ms. Bukala, just ask your question. They have a right and I have a right to rule. Next question.
MS. BUKALA: I want to offer testimony 
THE COURT: Next question. I sustained the objection to that.
MS. BUKALA: Okay.
BY MS. BUKALA:
Q. Following the accident, did you have any conversation with Sandy Wyatt concerning her concern over whether or not she was at fault for this accident?
MR. KUGLER: Objection.
THE COURT: Sustained. It's not part of rebuttal.
Next question?
BY MS. BUKALA:
Q. Did you see her at any time following the accident the next couple of days?
THE COURT: Sustained, no proper rebuttal.
MS. BUKALA: Well, your Honor, it's leading to proper rebuttal. I'm just trying to find 
THE COURT: Did I just rule? Did I just make a ruling?
MS. BUKALA: You didn't even hear any reason for the objection.
THE COURT: I sustained it because I don't need your reason. It's sufficient.
It's not proper rebuttal. You could have asked her this yesterday on the stand.
MS. BUKALA: I didn't know what Mrs. Henson was going to testify to.
THE COURT: That is not proper rebuttal.
MS. BUKALA: That is why I am asking now.
THE COURT: Sustained. Please proceed.
Preliminarily, we note that the trial judge erred in not permitting plaintiff to describe the content of Cremean's anticipated rebuttal testimony. If the trial judge had permitted counsel to indicate what testimony she expected to elicit on rebuttal, he *590 could have made a better informed decision concerning its admissibility. In their appellate brief plaintiffs advise us that:
... The purpose of calling [Barbara Cremean] was to rebutt [sic] the evidence concerning the defective brakes. Ms. Cremean was also called to testify concerning an admission made to her by Sandra Wyatt concerning the fact that Ms. Wyatt's husband removed the brake pads following the accident so that Firestone would be "framed" and held responsible for the accident. Ms. Cremean also proferred [sic] testimony as to certain other admissions Ms. Wyatt made concerning the cause of the accident. Ms. Cremean's testimony was critical and would have raised serious doubts in the jury's mind as to credibility of Sandra Wyatt's testimony. The purpose of the rebuttal testimony was to impeach Sandra Wyatt's credibility.
It was an abuse of discretion for the trial judge not to admit such rebuttal testimony. The alleged brake failure was a defense to plaintiffs' cause of action. Plaintiffs were not required to anticipate this defense during their affirmative case and to present responsive evidence. See State v. Provoid, 110 N.J. Super. 547, 557 (App.Div. 1970); Motus v. Ward, 6 N.J. Super. 166 (App.Div. 1950). Nor were plaintiffs required to anticipate Wyatt's testimony and to present evidence attacking her credibility before she testified. The questions asked on rebuttal were directed at eliciting testimony concerning statements by Wyatt which were inconsistent with her trial testimony that her brakes had failed. This was clearly proper rebuttal testimony both to attack Wyatt's credibility and as substantive evidence that the accident resulted from Wyatt's negligence and not from brake failure. See Evid.R. 20, 63(1)(a), 63(7).
We recognize that Cremean was later permitted to answer the following questions asked in rebuttal:
Q. Did Sandy mention anything to you at that time concerning the car or any repairs or any work that was going to be done on the car?
THE COURT: Yes or no?
THE WITNESS: Yes.
BY MS. BUKALA:
Q. Can you tell us what was said?
A. Well, she was upset  well, after the accident she was upset that Joe  he was going to be mad, and I asked her if he was going to be mad and she said that no, because it was going to be taken care of so far as 
THE COURT: He would be mad so far as Firestone would take care of it?
MS. BUKALA: No, your Honor.

*591 THE WITNESS: It would be taken care of as far as Firestone would be at 
THE COURT: Pardon me?
THE WITNESS: It will be taken care of so far as Firestone will be at fault.
While this testimony covered part of the subject matter plaintiffs had unsuccessfully attempted to inquire about previously, it did not encompass all the rebuttal testimony which Cremean was allegedly prepared to give. Therefore, the prejudice to plaintiffs from the trial judge's improper limitation of Cremean's rebuttal testimony was not cured.

III
Over plaintiffs' objection, Wyatt's father-in-law, Marvel Henson, was permitted to testify that he saw her car a few days after the accident and that there was brake fluid near one of the front wheels. He also was permitted to testify that he saw the car again approximately a month after the accident and that at that time the brake pad was worn down to the metal. The obvious purpose of this testimony was to support Wyatt's defense that the cause of the accident was brake failure.
We conclude that Henson's testimony was inadmissible in the absence of expert testimony that his observations would support an inference that the brakes were defective at the time of the accident. It is firmly established that if a subject is so esoteric that jurors of common judgment and experience cannot form a valid conclusion, a jury may not be permitted to draw a particular conclusion without the aid of an expert opinion. Butler v. Acme Markets, Inc., 89 N.J. 270, 283 (1982). Although the record indicates that Henson was qualified to recognize brake fluid and a worn brake pad, no attempt was made to qualify him to testify concerning the significance of his observations. However, expert testimony was required in order for the jury to infer from Henson's observations that Wyatt's brakes were defective at the time of the accident. Without expert testimony, the record does not disclose whether a leak of brake fluid or a worn brake pad could lead to sudden brake failure, or whether either of these conditions could have been caused by the accident itself or by operation of the vehicle after *592 the accident. Therefore, by allowing Henson to testify concerning his observations of the car after the accident, the trial judge permitted the jury to draw inferences which it was not qualified to draw.

IV
In view of the fact that a new trial is required based on the trial errors discussed above, there is no need to consider plaintiffs' argument that the trial judge abused his discretion in not declaring a mistrial when Wyatt's counsel indicated to the jury that his client had not received a summons. However, we note that this comment was made only after plaintiffs' counsel read an interrogatory answer to the jury which asserted that Wyatt had committed a traffic violation. If this interrogatory answer is read to the jury at the retrial, the reference to the commission of a traffic violation should be excised and thus the issue will not arise again.
Accordingly, the judgment of no cause of action is reversed and the matter is remanded for a new trial.
NOTES
[1] Plaintiffs have not appealed from the jury's verdict of no cause of action in favor of DeYoung.
[2] Wyatt filed a notice of cross appeal from "... certain evidentiary rulings made during trial...." However, appeals are taken solely from judgments. Chimes v. Oritani Motor Hotel, Inc., 195 N.J. Super. 435, 443 (App.Div. 1984). Here, the verdict of no cause of action was wholly in favor of Wyatt. Therefore, there was no order or judgment adverse to Wyatt from which she could appeal. In any event, the only "evidentiary ruling" challenged in Wyatt's brief is the trial judge's instruction to the jury with respect to the Firestone settlement. On remand any evidence of that settlement will be excluded and hence there will be no need for a jury instruction on this subject.