823 A.2d 899 (2001)
360 N.J. Super. 565
Robert C. BROWN, Plaintiff,
v.
Dr. and Mrs. Vincent B. PICA, Defendants.
Superior Court of New Jersey, Law Division, Mercer County.
Decided July 6, 2001.
*900 Edward S. Kahn, Lawrenceville, for Plaintiff Robert C. Brown.
Greenblatt & Laube, P.C., for Defendants Dr. and Mrs. Vincent B. Pica; Bonnie L. Laube, Vineland, appearing.
SABATINO, J.S.C.
On November 29, 1995, plaintiff, a corrections officer, slipped and fell on the premises of the defendant, a physician. Plaintiff had been escorting an inmate there for an eye examination. Plaintiff sustained a severe injury to his lower back from the incident, and eventually had two of his vertebrae surgically fused to help relieve his pain. He filed a personal injury action against the defendant, which was bifurcated for trial. The liability trial in May 2000 resulted in an allocation of fault of 65% for the defendant and 35% for the plaintiff. After a separate trial on damages in May 2001, a jury returned a verdict of $1,604,581, consisting of $73,797 in medical expenses, $31,783 in past lost wages and $1.5 million for pain and suffering, disability, and the loss of enjoyment of life.
Defendant moves for a new trial, arguing that the jury's award of damages for pain and suffering was manifestly excessive. Defendant's argument relies heavily on a comparison of the jury award with settlement proposals that had been exchanged by counsel during the course of the trial. In lieu of reciting the settlement proposals in detail here, the court will simply note that the damages awarded by the jury were several times the amounts demanded and offered in settlement before the verdict was returned.
The defendant's reliance on pre-verdict settlement figures to portray the jury's award as excessive raises, as a threshold issue, an important question of law that has not been squarely addressed in any prior reported case in New Jersey. Put simply, when a party moves for a new trial challenging a verdict on grounds of excessiveness, is it proper for a court to consider the settlement negotiations that transpired between the parties before the verdict was returned? For reasons of law and public policy, this court answers that question in the negative.
It is well known that over 90% of all civil cases filed in New Jersey and, indeed, in the United States as a whole, are resolved without a trial.[1] One of the most frequent means of resolution is by voluntary settlement of the parties.[2] A settlement is a *901 compromise designed to relieve each respective party of the costs of continued litigation and, just as importantly, to avoid continued risk. A trial is apt to produce a range of outcomes that can never be predicted with certainty before the case is decided on its merits. That is particularly true in matters involving unliquidated, inchoate claims for compensation such as pain and suffering and the loss of enjoyment of life.
In making a settlement proposal, a litigant attempts to avoid the risks associated with the trial process. For a plaintiff, the objective of settlement is to avoid the downside risk of no or little recovery. For a defendant, the objective is to avoid the upside risk of a large award. Although lawyers and judges profess to have expertise in predicting the outcome of a jury verdict ex ante, the reality is that such predictions are merely educated guesses.
To be sure, settlement proposals may reflect the cumulative pattern of outcomes in prior cases thought to be similar in nature. Those patterns, however, capture a wide range of prior results rather than the consistent achievement of a fixed number. As any experienced trial attorney knows, an enormous verdict returned in one case may easily be followed in the same courthouse by a string of no-cause verdicts in cases that apparently involve the same sort of facts. Every case is unique. Accordingly, the settlement process is not one that divines the so-called "true value" of a lawsuit. Rather, it is simply a method of avoiding risk and ongoing litigation costs.
Moreover, confidentiality is a fundamental ingredient of the settlement process.[3] Parties engaged in settlement negotiations must be free to make and reject offers of compromise without fear that such discussions will be used to their disadvantage if their cases go to trial. Otherwise plaintiffs would be reluctant to make non-exorbitant settlement demands, lest their willingness to take a modest amount in settlement be used against them in the courtroom if a settlement is not attained. Likewise, defendants ordinarily would not be inclined to offer any money in settlement, or at least more than a token sum, if they knew that their willingness to make such offers eventually would be treated as evidence of the fact and the extent of liability in cases that did not settle.[4] Further, the confidentiality of the settlement process aids in the free and frank discussion of the case between the parties. By contrast, "on the record" settlement discussions would inevitably result in adversarial posturing rather than constructive dialogue.
These fundamental precepts are not dislodged by the involvement of a judge in settlement discussions with the consent of the parties.[5] Such consensual discussions *902 took place in chambers during this very trial. A judge can often function as an effective mediator of a dispute that is pending disposition. Like other neutrals engaged in alternative dispute resolution, a judge can help facilitate discussions, identify areas of potential compromise, and suggest specific options to be considered by both sides. Judges and attorneys engage in this process routinely, with the express or implied understanding that if settlement talks fail, no party is prejudiced and the matter will be decided formally on its merits without any reference on the record to the confidential discussions that were conducted with the court's assistance.
These general principles are enshrined in our law. For decades in our state, offers of compromise have been excluded from consideration as proof of the merit, or the lack of merit, of a litigated claim. See, e.g., Wyatt v. Wyatt, 217 N.J.Super. 580, 585-87, 526 A.2d 719 (App.Div.1987)(reversing verdict where trial court had admitted testimony about prior settlement payment); Winfield Mutual Housing Corp. v. Middlesex Concrete Products & Excavating Corp., 39 N.J.Super. 92, 100, 120 A.2d 655 (App.Div.1956)(reversing judgment predicated on erroneous admission into the record of a letter from defendant offering to compromise the matter).
As the Appellate Division has previously recognized, the rationale for ignoring such settlement conduct when considering a case on its merits is twofold. First, offers of compromise are not factually relevant. They do not imply a belief that an adversary's position is well-founded, but rather reflect "a purchase of the offeror's peace." Wyatt, supra, 217 N.J.Super. at 586, 526 A.2d 719; see also 4 Wigmore on Evidence § 1061 (Chadbourn rev. 1972). Second, there is a vital public policy in encouraging voluntary dispute resolution that would be thwarted if a settlement proposal could only be made at the peril of knowing that it could be used in court against the maker of the proposal if no settlement was achieved. Wyatt, supra, 217 N.J.Super. at 586, 526 A.2d 719; see also McCormick on Evidence § 266 at 411 (Strong ed., 5th ed. 1999) (noting the "social desirability of promoting settlements of controversies over disputed claims").
Presently, New Jersey Evidence Rule 408 reflects this tradition, in barring the use of offers of compromise to bear upon the validity or amount of a disputed claim. The Rule states as follows:
When a claim is disputed as to validity or amount, evidence of statements or conduct by parties or their attorneys in settlement negotiations, with or without a mediator present, including offers of compromise or any payment in settlement of a related claim, shall not be admissible to prove liability for, or invalidity of, or amount of the disputed claim. Such evidence shall not be excluded when offered for another purpose; and evidence otherwise admissible shall not be excluded merely because it was disclosed during settlement negotiations.

[N.J.R.E. 408.]
N.J.R.E. 408 was adopted in 1993 as part of the State's comprehensive revision of the state evidence rules. The text of the New Jersey version almost identically tracks the language of Federal Rule of Evidence 408, which likewise bars the use of offers of compromise to prove or disprove the validity or invalidity of a claim or the amount of a claim. Fed.R.Evid. 408. Significantly, the present New Jersey rule is more expansive than former New Jersey Evidence Rules 52(1) and 53, which Rule 408 replaced, in that the new *903 rule expressly deems an offer of compromise inadmissible to prove the amount of a claim as well as the claim's validity or invalidity. Thus, the prohibition of current Rule 408 extends both to questions of liability and of damages.
Rule 408 was amended in 1999 to make clear that it covers statements or conduct that occur in settlement negotiations "with or without a mediator present." Biunno, Current N.J. Rules of Evidence, comment 1 on N.J.R.E. 408 (2001). Hence, it is unimportant to resolve whether or not the trial judge in this matter was or was not acting as a "mediator" in settlement negotiations during the course of this trial. The Rule applies either way.
The court also notes that N.J.R.E. 101(a)(2) prescribes that the state Rules of Evidence "shall apply in all proceedings, civil or criminal, conducted by or under the supervision of a court." N.J.R.E. 101(a)(2) (emphasis added). Although there are several exceptions enumerated in Rule 101(a)(2) authorizing the rules of evidence to be relaxed in certain contexts, none of those exceptions concern a motion for a new trial.
Defense counsel have emphasized that the second sentence of Rule 408 allows proof of compromise to be offered for "another purpose," apart from proof of the liability for, or invalidity of, or the amount of a disputed claim. N.J.R.E. 408. However, defendant has not cited, nor has the court's own research disclosed, any prior New Jersey case in which a trial or an appellate court of this state considered the monetary amounts of the parties' pre-verdict settlement proposals in deciding in retrospect whether or not a jury verdict was excessive or insufficient as a matter of law.
To the contrary, numerous cases from the federal courts and from other states have expressly deemed it improper for a court to consider the parties' past settlement proposals in determining whether a jury verdict was or was not excessive or insufficient. See, e.g., Holley v. Cincinnati-Forte Co., No. 87-1779, 1988 WL 55234, at *3 (E.D.Pa.1988); Ellenberger v. Van-Vorst, No. 88C-DE-122, 1991 WL 113582, at *3 (Del.Super.1991) (holding that it was improper for the trial court to consider plaintiff's lower pre-verdict settlement demands where a jury thereafter awarded plaintiff $6.8 million in damages and $1.9 million for loss of consortium); Pratt v. Sevenski, 120 A.D.2d 953, 502 N.Y.S.2d 863, 865 (4th Dept.1986) (holding that "the [trial] court improperly considered the [plaintiff's] settlement demand and its own pretrial damage figure as indicative that the verdict was excessive. These figures are established before the ultimate determination of liability was made and cannot be compared to the jury's assessment of damages."); Miller v. Breidenbach, 520 N.W.2d 869, 874 (N.D.1994) (noting, in the context of a post-trial motion to set aside a jury verdict, that "[e]vidence of conduct or statements made in compromise negotiations is likewise not admissible....While the rule `does not require exclusion if the evidence is offered for another purpose,' measuring the amount of damages is not another purpose, but the very purpose prohibited by NDREv 408."); Haid v. Ohio Presbyterian Homes, No. 84AP-452, 1985 WL 9671, at *1 (Ohio App. 10 Dist.) (in considering a defendant's motion to remit a verdict, plaintiff's pre-trial settlement offer of $35,000 was not relevant to whether the jury's award of $85,000 was excessive).
In the same vein, this court finds persuasive a line of cases from sister courts in Pennsylvania. Ammon v. Arnold Pontiac-GMC, Inc., 361 Pa.Super. 409, 522 A.2d 647, 649 (1987) (finding it "entirely inappropriate to review a jury verdict based *904 upon facts which, as a matter of law, were barred from jury consideration. The court should not have made reference to or considered [plaintiff's] settlement demands."); accord Beswick v. Maguire, 748 A.2d 701, 706 (Pa.Super.Ct.2000) (applying Ammon, court deemed it inappropriate to consider pre-trial settlement figures in ruling upon motions by a plaintiff and his wife seeking a new trial based upon alleged insufficiency of the verdict); Mecca v. Lukasik, 366 Pa.Super. 149, 530 A.2d 1334, 1341 (1987) (following Ammon in holding that plaintiffs' willingness to settle before trial for significantly less money was not to be considered in the court's determination of the excessiveness of jury verdicts averaging $3.5 million for each of five teenagers killed in a car crash).
Of particular note is Senior Federal District Judge Van Artsdalen's opinion in Holley v. Cincinnati-Forte Co., supra, a case where the plaintiff had made an application for a new trial because he was dissatisfied with the jury's award of $30,000 in damages. In denying that motion, Judge Van Artsdalen made the following pertinent comments relative to the settlement negotiations that had preceded the verdict:
In arguing the inadequacy of the verdict, plaintiff's counsel makes representations as to the trial judge's suggestions for settlement prior to the trial and offers of settlement by defendant after liability had been determined. I consider these arguments to be of no value and probably inappropriate. If good faith offers of settlement are going to be later utilized to establish the inadequacy of a verdict, it will certainly chill incentives to make offers. In addition, such use of settlement offers should cause any careful lawyer to make lower offers. This would reduce the likelihood of settlement or, if a settlement is reached, lower the amount a plaintiff might otherwise receive. As for the "recommendation" of the trial judge prior to trial, I have no hesitation in saying that my recommendations often miss the mark by a wide margin.[6] Where my recommendation is higher than the award of the jury, it may be because plaintiff's counsel painted a far rosier picture of the merits of the client's case than is presented at trial or it may be due to this trial judge's "liberal" attitude as to fair compensation. Of course, where a recommended settlement is substantially less than that returned by the jury, the converse may be true; that is, defense counsel painted a rosier picture, or I may have a very "conservative" attitude of fair compensation. In any event, a recommendation for settlement prior to trial should not be, in any way, a benchmark to determine whether a jury verdict is excessive or inadequate.

[Holley v. Cincinnati-Forte Co., No. 87-1779, 1988 WL 55234, at *3 (E.D.Pa.1988) (emphasis added).]
The court finds that the same logic enunciated by Senior District Judge Van Artsdalen in Holley v. Cincinnati-Forte Co. about pre-trial settlement discussions applies to the settlement discussions that were pursued during this trial.
Although this court has in good conscience looked for contrary authority, it has found none. This court therefore finds that the law of New Jersey should be in accord with the cases cited above from other jurisdictions. What a litigant may have offered to take or to pay in settlement prior to a jury verdict has no bearing on whether that verdict, once announced, *905 is excessive or insufficient as a matter of law.
Settlement numbers are simply the product of a risk calculus. Surely the defendant in this very case, nor defendants in future cases, would not want a plaintiff who received a "no-cause" verdict to obtain post-trial relief from the adverse judgment by hearkening back to what the defendant had been willing to pay in settlement before the verdict is announced. No matter whose ox is gored, the conclusion should be the same: rejected settlement numbers ought not influence a post-trial motion for a new trial.
Further, this court finds that there would be extremely adverse public policy consequences if courts fielding post-trial motions retroactively took into account the relative value of prior settlement proposals. Such precedent would chill settlement negotiations severely, and result in even more cases going to trial. The associated expense and delay for litigants and for the judicial system as a whole would not be justified. Indeed, our state judiciary has long favored Complementary Dispute Resolution as a matter of policy. See, e.g., R. 1:40-1 et seq. (authorizing a variety of C.D.R. mechanisms in civil matters); see generally the periodic Reports of the New Jersey Supreme Court's Committee on Complementary Dispute Resolution. The Legislature has implicitly endorsed that policy by its ratification of Evidence Rule 408. The approach advocated by the defense here runs entirely counter to that policy. It is therefore rejected.
Accordingly, this court holds as a matter of law that the settlement discussions that took place before and during the trial of this matter are not to be considered in connection with defendant's motion for a new trial grounded on a theory of excessiveness.
NOTES
[1] See generally New Jersey Administrative Office of the Courts, Statistical Report for the Judicial Council Meeting on June 28, 2001 (reporting data from period July 2000 to May 2001 showing that only 1.95% of all civil cases were tried, and that 44.3% of the cases settled); see also Developments in the Lawthe Paths of Civil Litigation VI.: ADR, the Judiciary and Justice: Coming to Terms with the Alternatives, 113 Harv. L.Rev. 1851, 1852 (2000) (highlighting "[t]he oft-cited statistic that fewer than ten percent of all cases filed result in a judicially adjudicated decision").
[2] See, e.g., Marc Galantar & Mia Cahill, Most Cases Settle: Judicial Promotion and Regulation of Settlements, 46 Stan. L.Rev. 1339, 1339-40 (1994) (noting empirical research showing that two-thirds of civil cases settle without a definitive judicial ruling).
[3] See generally, Joshua P. Rosenberg, Keeping the Lid on Confidentiality, 10 Ohio St. J. Disp. Resol. 157 (1994) (discussing the importance of confidentiality in mediation).
[4] See Jack M. Sabatino, ADR As "Litigation Lite": Procedural and Evidentiary Norms Embedded Within Alternative Dispute Resolution, 47 Emory L.J. 1289, 1334 (1998) (observing that "[c]onfidentiality is vital to promoting frank discussions and bargaining concessions within the mediation process. Disputants otherwise would be unwilling, or at least be extremely reluctant, to acknowledge weaknesses in their positions or to tender proposals, out of fear that their statements...would be used against them...if the matter failed to settle.").
[5] "Over the past five decades, first state and then federal judges have embraced active promotion of settlement as a major component of the judicial role." Galantar & Cahill, supra, 46 Stan. L.Rev. at 1340.
[6] This judge candidly joins in Judge Van Artsdalen's general observation. Forecasting verdicts is about as scientific a process as handicapping race horses and picking stocks.