# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3896-18T3

Y.D.,

    Plaintiff-Respondent,

v.

M.H.,

    Defendant-Appellant.

_____

        Submitted December 16, 2020 – Decided January 29, 2021

        Before Judges Accurso and Vernoia.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FV-09-1100-19.

        Leslie A. Farber, attorney for appellant.

        Ziegler, Zemsky & Resnick, attorneys for respondent (Melissa B. Zemsky, on the brief).

PER CURIAM

    Following a trial, a Family Part judge entered a final restraining order in

favor of plaintiff Y.D. pursuant to the Prevention of Domestic Violence Act,

N.J.S.A. 2C:25-17 to -35, based on findings that defendant M.H. committed the predicate acts of harassment, N.J.S.A. 2C:33-4, assault, N.J.S.A. 2C:12-1(a), stalking, N.J.S.A. 2C:12-10(b) and terroristic threats, N.J.S.A. 2C:12-3, during a series of incidents between November 19, 2018, and November 24, 2018.[1] Defendant argues on appeal that there is insufficient credible evidence supporting the court's findings of each of the predicate acts, and the court erred by permitting plaintiff to reopen her case after defendant rested, admitting in evidence an audio recording of a November 23, 2018 incident between the parties and relying on the recording to support its decision. We reject defendant's contentions and affirm.

Plaintiff and defendant had a fifteen-year romantic relationship, and they share three children. Defendant is married and has three children with his wife. On November 23, 2018, following a series of incidents between the parties during the preceding weeks, plaintiff filed a complaint and obtained a temporary domestic violence restraining order against defendant. Plaintiff amended the complaint on two occasions and obtained two amended temporary restraining

_____

[1] We use initials to identify the parties because the identity of a victim of domestic violence and the identities of the parties in a domestic violence matter are excluded from public access. R. 1:38-3(d)(9) and (10).

A-3896-18T3

orders. The final amended complaint alleged defendant committed the predicate acts of harassment, terroristic threats, stalking, and assault.

At trial, plaintiff and defendant provided conflicting versions of the alleged domestic violence incidents. The parties' respective versions of some of the events were either supported or contradicted by the testimony of other witnesses. One of defendant's children testified in support of his version of some of the events. We briefly summarize the testimony and evidence presented concerning the separate incidents to provide context for our analysis of defendant's arguments.

November 4, 2018

Plaintiff testified she brought the parties' oldest child to her workplace on November 4, 2018. While there, the child stole a phone plaintiff had sold to a co-employee. After defendant picked up the child from plaintiff's workplace, plaintiff realized the child had stolen the phone. She then called defendant, and told him the child had the phone. According to plaintiff, defendant said he would not return the phone until plaintiff gave him the phone's password. Plaintiff surmised defendant asked the child to take the phone because he believed plaintiff was seeing another man.

 A-3896-18T3

According to plaintiff, as she later drove home from work, she saw defendant's parked car, and she stopped to retrieve the phone. She and defendant then "scuffl[ed]" over the child returning the phone to plaintiff.

Defendant testified he did not ask the child to take the phone and did not ask plaintiff for the password. He testified that after plaintiff approached his parked car, she slapped the child.

Defendant recorded part of the parties' interaction at his vehicle. The recording shows plaintiff called the police, and she reported defendant stole the phone and would not return it. The police officer who arrived at the scene testified that he did not observe any evidence of physical violence between the parties and that defendant reported plaintiff abused the child. The officer did not file charges against either party.

November 8, 2018

Plaintiff testified that on November 8, 2018, defendant brought food to her home, and he became upset because she refused to serve the food to him. Plaintiff explained that defendant "got in [her] face," spit at her, and then left her house.

Defendant acknowledged he brought food to plaintiff's home. He denied asking her to serve him, yelling at her, and spitting at her.

 A-3896-18T3

November 17, 2018

Plaintiff testified that on November 17, 2018, defendant threatened to kill her and their children, and also threatened to remove their children from her if she did not take a polygraph exam. The purpose of the exam was to determine whether plaintiff had "cheat[ed] on" defendant with another man. Plaintiff took the polygraph exam in response to defendant's threats, but she never received the results.

Defendant denied threatening plaintiff if she did not take the polygraph exam. He testified that plaintiff took the exam voluntarily and that he never obtained the results or cared about them. He stated his only concern was plaintiff's happiness.

November 19, 2018

Plaintiff explained that on November 19, 2018, defendant was at her home and "smacked" her on the face when she attempted to kiss him as he was about to leave. She later sent a text message to defendant asking why he hit her, but he did not respond. According to plaintiff, defendant later called and apologized for hitting her. At trial, defendant admitted going to plaintiff's home on November 19, 2018, but he denied slapping her.

A-3896-18T3

Defendant's father testified that he, defendant's mother, and defendant went to plaintiff's home on November 19, 2018. He explained plaintiff and defendant were never alone during the visit, and he did not see defendant slap plaintiff or observe any marks on plaintiff's face.

November 22, 2018

Plaintiff testified that on Thanksgiving, November 22, 2018, defendant went to plaintiff's home, and she permitted him to enter her bedroom because he said he wanted to speak with her. Once in the bedroom, defendant told plaintiff that he apologized for slapping her three days earlier because he wanted to get back into her home. Plaintiff testified defendant said he felt like "slicing [plaintiff's] throat, leaving [her] on the bed to die and bleed out, and . . . mak[ing] it look like someone else did it." Plaintiff said she was "shock[ed]" by defendant's statement. Defendant then attempted to kiss plaintiff, and, when she resisted, he became angry and left her home.

Defendant testified he went to plaintiff's home only to exchange vehicles with her, and he never entered the home. He said he saw plaintiff only when she opened the garage door for him, and that she had a bottle of an alcoholic beverage in her hands. Defendant said he did not threaten plaintiff, and he did not speak with her when she drank.

6

One of defendant's children testified she was with defendant when the vehicles were exchanged, and she saw plaintiff with the bottle in her hands. The child explained she did not go into plaintiff's home, and that defendant spoke with plaintiff only over the phone when he asked plaintiff to open the garage door.

November 19, 2018 through November 23, 2018 – Text Messages and Photos

During the week of November 19, 2018, defendant sent plaintiff photographs of plaintiff naked that plaintiff testified defendant took from outside her home without her permission. Defendant also sent plaintiff a photograph of the male co-worker with whom defendant suspected plaintiff was romantically involved. The photographs were accompanied by texts, such as "He [t]alking to his pussy," "Aww you so [i]n love," and "Perfect couple."

Plaintiff responded to the texts and photographs, sending text messages stating, "Stop harassing me," "You are sick in the head," "You need a lot of help," "I told you already I am not with anyone," "Why do you have pictures of me naked," and "What is wrong with you." Plaintiff also texted, "[T]he fact that you said that you will kill me by cutting my throat and leaving [me] on the bed to die . . . How could you think like that[?] That scares me."

A-3896-18T3

Defendant testified he took the photographs of plaintiff with her consent, and he sent them simply to show them to her. He explained that he sent the comments accompanying the texts because he did not know the man's record and he was concerned for his children's safety. Defendant testified he "respect[ed]" plaintiff's relationship with her male co-worker, and defendant denied he was jealous or otherwise concerned about the relationship.

November 23, 2018

On November 23, 2018, plaintiff brought the parties' oldest child to work. Plaintiff testified defendant appeared unexpectedly at her place of employment, stood very close to her, and accused her of cheating on him. Plaintiff explained she repeatedly asked defendant to leave, told him he was scaring her, and advised him that he would get her fired. Plaintiff claimed she feared for her safety, and, after she left work, she filed a complaint requesting a temporary restraining order against defendant.

Defendant testified he went to plaintiff's place of employment because she told him they could speak there. Defendant said he was confused once he arrived because plaintiff kept saying she was afraid of him, so he left. Defendant also testified he never entered plaintiff's place of employment on that day.

8

During cross-examination of defendant, plaintiff's counsel sought to introduce into evidence an audio recording of the November 23, 2018 incident that plaintiff made on her phone. The recording shows defendant accused plaintiff of being unfaithful to him with another man, called plaintiff a "prostitute," and accused her of "whoring herself out" to other men. Plaintiff repeatedly asked defendant to leave her workplace, told defendant he was scaring her, and explained that defendant would get her fired. The interaction took place in front of the parties' oldest child, who can be heard on the recording.

Defendant objected to the admission of the recording. The court sustained the objection, finding there was an inadequate foundation for its admission because defendant did not make the recording and the recording did not have a time stamp.[2]

November 24, 2018

Plaintiff testified that on November 24, 2018, defendant went to plaintiff's house because plaintiff had been ignoring his calls and texts. Plaintiff had wrapped a phone cord around the handle of the door to her home to prevent defendant from entering and so she could hear defendant if he attempted to enter.

---

[2] Plaintiff did not cross-appeal from the court's denial of her request to for admit the recording in evidence.

A-3896-18T3

Defendant arrived, cut the wire, and entered the home. Plaintiff testified defendant entered her bedroom, "jumped on [her] and started choking [her]," and said he owned her. Plaintiff screamed and tried to call 911, but defendant took her phone from her. Eventually, plaintiff was able to dial 911 and, at that point, defendant left.

Defendant testified he went to plaintiff's home because they had agreed to go shopping for a coat. When he arrived at the home, plaintiff did not answer her phone or the door. Defendant explained that he was concerned about plaintiff's safety, and when he entered the home, he saw a thin phone cord and heard a popping noise when he pushed the door open. He also testified the cord was cut when he opened the door. Defendant testified he checked on plaintiff in her bedroom, and she started screaming and saying she had obtained a restraining order against him. Defendant said he left the home after plaintiff called the police.

Admission of The Audio Recording of The November 23, 2018 Incident

After defendant completed the presentation of his case, plaintiff sought to reopen her case to lay the proper foundation to admit in evidence the audio recording of the November 23, 2018 incident at her workplace. Defendant objected, but following plaintiff's testimony about the recording, the court

 A-3896-18T3

admitted it in evidence for the purpose of rebutting defendant's testimony that he was not inside plaintiff's place of employment that day.

The Court's Decision

In its opinion from the bench, the court found plaintiff testified in a consistent and credible manner, and the court accepted plaintiff's testimony as truthful. The court explained that it rejected most of defendant's testimony because he provided inconsistent versions about what occurred and why he acted in the manner plaintiff described. The court also found defendant provided false testimony about some issues, and, for that reason, the court concluded most of defendant's other testimony was similarly false.

The court also found defendant's suspicions about plaintiff's involvement with another man became an issue between the parties beginning around November 17, 2018. The court found defendant falsely testified he did not have an issue with plaintiff seeing another man, and that his testimony was undermined by other credible evidence.

The court reviewed the separate incidents and found defendant committed a predicate act of assault on November 19, 2018, when he slapped plaintiff in the face while in her home.

A-3896-18T3

The court also found defendant committed the predicate act of terroristic threats on November 22, 2018, when he arrived at plaintiff's home uninvited and threatened to slice her throat and leave her to bleed out. The court rejected as not credible defendant's denial that he threatened to slice plaintiff's throat. In part, the court reasoned plaintiff's text messages to defendant restating his threat to her confirmed her testimony about the incident.

The court also determined that defendant's sending of the naked photos of plaintiff and the photos of the man defendant suspected plaintiff of seeing constituted the predicate act of harassment. The court concluded the photos and the texts were intended as a veiled threat to plaintiff that defendant would share the photos with others if plaintiff did not end her relationship with the other man.

The court further determined that defendant's appearance at plaintiff's workplace on November 23, 2018, and his statements and conduct during that incident, constituted the predicate act of harassment. The court found defendant did not, as he asserted, go to plaintiff's home on November 24, 2018, to check on her. The court determined defendant went to plaintiff's home because she would not respond to, or speak with, him, and defendant entered the home knowing she did not want to see him. The court concluded defendant's

12

appearance at plaintiff's place of employment on November 23, 2018, and his entry into her home on November 24, 2018, constituted the predicate act of stalking, and that he committed an assault by choking plaintiff after entering her home on November 24, 2018.

The court also determined defendant presented an ongoing danger to plaintiff and that a restraining order was required to protect plaintiff from future acts of domestic violence. The court granted plaintiff's application for a final restraining order. This appeal followed.

Defendant offers the following arguments for our consideration. He contends the court erred in its credibility determinations, it ignored evidence contradictory to plaintiff's version of the events, and its findings of fact are unsupported by sufficient credible evidence. He also asserts the court erred by allowing plaintiff to reopen her case, admitting into evidence the recording of the November 23, 2018 incident at plaintiff's place of employment, and considering the recording for reasons beyond those for which the court admitted it into evidence.

"We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between

couples.'" C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020) (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)). "[D]eference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" MacKinnon v. MacKinnon, 191 N.J. 240, 254 (2007) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)).

Generally, "findings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence." Gnall v. Gnall, 222 N.J. 414, 428 (2015). We will not disturb a trial court's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins., 65 N.J. 474, 484 (1974)). We do not accord such deference to the court's legal conclusions, which we review de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

Measured against these standards, we find no merit to defendant's claims that the court erred in making its credibility determinations and that there is insufficient credible evidence supporting the court's findings of fact. The court analyzed plaintiff's and defendant's respective testimony and evidence, and it determined plaintiff offered a credible version of the events and defendant did not. The court found plaintiff credible based on her demeanor, the consistency

of her version of the events, and the text messages between the parties. The court explained defendant was not credible based on his demeanor and because he testified falsely. We acknowledge there was some limited testimony offered by defendant's father and defendant's daughter that is inconsistent with plaintiff's version of the events, but we reasonably infer based on the court's express finding plaintiff's testimony was credible, that it determined any inconsistent testimony or evidence was either incredible or otherwise unpersuasive. We find no basis in the record to question the court's credibility determinations, and we defer to them. Gnall, 222 N.J. at 428; MacKinnon, 191 N.J. at 254.

Plaintiff's testimony and evidence, including the emails and photos, provide ample support for the court's determination that defendant committed the predicate acts of harassment, stalking, terroristic threats, and assault.[3] Indeed, defendant acknowledges in his brief on appeal that plaintiff's testimony and evidence, if true, provide adequate support for the court's finding that defendant committed the predicate acts of harassment, terroristic threats,

---

[3] The evidence also supports the court's finding a final restraining order was required to protect plaintiff and prevent defendant from committing future acts of domestic violence against plaintiff. See Silver v. Silver, 387 N.J. Super. 112, 126-27 (App. Div. 2006). Defendant does not argue otherwise.

stalking, and assault. Because the court found plaintiff's testimony and evidence credible, we therefore affirm the court's factual findings and legal conclusion that defendant committed each of the predicate acts supporting the court's grant of the final restraining order. Gnall, 222 N.J. at 428. Defendant's claim that the court erred in finding plaintiff's testimony and evidence credible does not warrant any further discussion in a written opinion. R. 2:11-3(e)(1)(E).

We also reject defendant's claim that we should reverse the final restraining order because the court erred by permitting plaintiff to "reopen" her case, admitting the audio recording of the November 23, 2018 incident in plaintiff's workplace, and relying on the recording for reasons other than that it contradicted defendant's testimony that he never entered plaintiff's workplace.

The decision to permit a party to reopen its case on the proofs or on rebuttal rests within the sound discretion of the trial court. Magnet Res., Inc. v. Summit MRI, Inc., 318 N.J. Super. 275, 297 (App. Div. 1998); Healy v. Billias, 17 N.J. Super. 119, 122 (App. Div. 1951). "An abuse of discretion 'arises when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis."'" Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

We find no abuse of discretion in the court's decision to permit plaintiff to reopen her case. The evidence was proffered to rebut defendant's testimony that he did not enter plaintiff's workplace on November 23, 2018, and it otherwise undermined his version of what occurred during the incident. Contrary to defendant's assertion, the evidence was not cumulative, and it was otherwise probative as impeachment and substantive evidence concerning what occurred at plaintiff's workplace. Cf. Casino Reinvestment Dev. Auth. v. Lustgarten, 332 N.J. Super. 472, 497 (App. Div. 2000) (finding a court abused its discretion by barring rebuttal evidence that "was neither cumulative nor repetitive of testimony offered in plaintiff's case" and "both challenged and contradicted testimony produced for the defense"); Wyatt ex rel. Caldwell v. Wyatt, 217 N.J. Super. 580, 590 (App. Div. 1987) (reversing a trial court's order barring proffered rebuttal impeachment and substantive evidence, and explaining the plaintiffs were not required to "anticipate" the defendant's testimony and "attack[] [the defendant's] credibility before she testified"). We therefore discern no abuse of discretion in the court's decision allowing plaintiff to reopen her case to admit the recording.

Defendant correctly argues that when the court overruled his objection to plaintiff's request to reopen her case, the court indicated it would consider the

audio recording for the purpose of assessing defendant's testimony that he did not go into plaintiff's workplace. Defendant also correctly notes the court actually relied on the recording as substantive evidence of what occurred during the November 23, 2018 workplace incident.

To the extent the court erred by relying on the recording in a manner inconsistent with the limited purpose for which it admitted the evidence, the error was harmless because it was not clearly capable of producing an unjust result. R. 2:10-2. Plaintiff's testimony, which the court found credible, provides an alternative and independent basis for the court's findings of fact concerning the workplace incident. And, even had the court considered the recording solely for the purpose of impeaching defendant's testimony that he did not go into plaintiff's workplace, the recording otherwise supports the court's determination that defendant was not a credible witness because he falsely testified at trial. Additionally, there is sufficient evidence the court found credible that otherwise supports the court's findings of each of the predicate acts without regard to the audio recording of the workplace incident. The court's reliance on the recording for purposes beyond those for which it was admitted was therefore harmless.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3896-18T3