**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5113-14T3

S.A.,

    Plaintiff-Appellant,

v.

NEW JERSEY DEPARTMENT OF
EDUCATION,

    Defendant-Respondent.

_____

Argued May 9, 2018 — Decided July 11, 2018

Before Judges Koblitz, Manahan, and Suter.

On appeal from Superior Court of New Jersey,
Law Division, Mercer County, Docket No. L-
1023-11.

Nina Rossi argued the cause for appellant (Law
Offices of William J. Courtney, LLC,
attorneys; Nina Rossi, on the brief).

Noreen P. Kemether, Deputy Attorney General,
argued the cause for respondent (Gurbir S.
Grewal, Attorney General, attorney; Melissa
Dutton Schaffer, Assistant Attorney General,
of counsel; Peter D. Wint, Assistant Attorney
General, on the brief).

PER CURIAM

Plaintiff S.A.[1] appeals from the June 2, 2015 order dismissing her second amended complaint against defendant New Jersey Department of Education (DOE), following the jury's verdict in favor of DOE. We affirm.

I

Plaintiff filed suit against DOE in 2011. Following amendment, the complaint alleged violations of the New Jersey Family Leave Act (FLA), N.J.S.A. 34:11B-1 to -16 (Count One); the Family Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654 (Count Two); the New Jersey Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14 (Count Three); the New Jersey Law Against Discrimination (LAD)- perceived disability, N.J.S.A. 10:5-1 to -49, (Count Four); and the public policy of the State of New Jersey (Count Five). It also alleged retaliation under LAD (Count Six) and retaliation under the FLA (Count Seven). Plaintiff claimed she was retaliated against for her use of family medical leave. She sought judgment for compensatory damages, lost wages, emotional distress, punitive damages and attorney's fees.

Counts One (FLA), Two (FMLA) and Five (public policy) were dismissed with prejudice in February 2015, by an order granting

---

[1] We use initials for privacy purposes because part of the record is referenced as a confidential appendix.

DOE summary judgment. Plaintiff does not appeal the order.[2] The case was tried to a jury for sixteen days in April and May 2015, on the remaining counts. On June 2, 2015, the jury returned a verdict in favor of DOE. An order dismissing the case was entered the same day.

Plaintiff is an educational program development specialist (educational specialist) employed by DOE. Her mother, who lived a distance away in western New York State, suffered a major stroke in March 2008. Plaintiff traveled back and forth from New Jersey to assist with her care. She exhausted her paid leave in 2008, and then used unpaid leave. In February 2009, she was assigned to DOE's Bergen County Office when the East Orange Office closed. Two other educational specialists, Norah Peck and Pernell Brice, were assigned to the Bergen office after her. They had office space near plaintiff. Plaintiff previously worked with Peck and had a "friendly" relationship with her.

In 2009, plaintiff exhausted her paid leave time again and used unpaid "voluntary furlough." Her requests to use "intermittent family leave" under the FLA were approved. Dr. Aaron Graham, plaintiff's supervisor in the Bergen office,

---

[2] The CEPA claim in Count Three was dismissed by the court shortly before trial after plaintiff elected to proceed with the LAD perceived disability and retaliation claims.

testified that he "certainly support[ed]" plaintiff's use of family leave, which he thought was "a legal entitlement" and "a good thing" for State employees. However, plaintiff frequently was late to work or absent for reasons unrelated to her mother's illness, such as oversleeping or attending her own medical appointments. At times, plaintiff would report off from work or call in that she would be late after her scheduled start time. Plaintiff's unanticipated absences affected the operations of the office because she would miss meetings and then need to have information explained to her. She used more time off than other employees and exhausted her paid leave time by mid-year in 2009.

In the Fall of 2009, plaintiff's relationship with Peck became strained when on October 2, 2009, Peck had a discussion with plaintiff, advising plaintiff that because of her absences, Peck could not rely on her. Although Peck testified she was concerned that plaintiff was jeopardizing her job, plaintiff interpreted this conversation as a criticism of her use of intermittent family medical leave. According to Peck, plaintiff was "vibrating with rage" and crying during the conversation; she screamed at Peck in the office. After that, Peck was "nervous" to be around plaintiff; she was "afraid to have interactions with her." Plaintiff accused Peck of shutting her out, which she said was "inhumane" and created a hostile work environment.

Plaintiff's work relationship with Sharon Rosario, another educational specialist assigned to the Bergen office after Brice transferred, also was strained. Rosario asserted that plaintiff sent her multiple emails daily and wanted immediate responses. Rosario testified about an incident where plaintiff came up behind her and Peck, screaming at Peck about responding to her emails. Plaintiff called Peck a "bully" and yelled at Peck as she was walking away from plaintiff.

Plaintiff interpreted a comment from Graham that she received in her April 2010 interim performance assessment review (PAR) as critical of her because of her use of family leave. In the "Specific Areas Identified for Development" section, he wrote, "[S.A.] has family support and care giving needs that result in her making more than usual leave requests. While understanding her circumstance[s], [S.A.] needs to develop improved ways and means to increase her days in the office as she meets family needs." Graham testified that this was a reference to her non-family leave absences because she had not taken any family leave during the timeframe covered by that PAR. He wanted her to spend more time in the office on non-family leave days. He spoke to her about her use of non-family leave time. She received a "satisfactory" rating on the PAR, checked the box on it that said she agreed with it, and signed it. John E. Boreman, DOE's County

School Business Administrator in the Bergen office, talked to plaintiff about her non-family leave attendance issues; he would not permit her to work through her lunch. Plaintiff's pattern of unscheduled leave continued. She used more non-family leave time than others.

Plaintiff testified that Peck and Rosario "shunned" and "isolated" her professionally. Plaintiff wanted the education specialists to be able to share their work calendars even though she had access to them through the Superintendent's secretary. She wanted to move her office closer to Peck and Rosario. Graham did not grant her requests.

When Graham retired in November 2010, plaintiff asked for a reassignment, mentioning the issues with Peck and Rosario in her email to Dodi Price, DOE's Director of Human Resources and to David Corso, then DOE's Director of Administration. Plaintiff claimed Peck created a hostile work environment because of plaintiff's use of family medical leave, Peck and Rosario excluded her from activities in the office, she had "high anxiety and even higher blood pressure levels" and could not "tolerate working under these conditions."

Plaintiff was referred to Mabel Williams, the Affirmative Action (AA) Officer and manager of the Equal Employment Opportunity (EEO) Office, after she emailed Corso and Price that she was

6

"depressed," "losing sleep and suffering blood pressure increase" and "sick" because of Peck and Rosario. After plaintiff and Williams talked, Williams told plaintiff that none of the behaviors she described "violate[d] the State [p]olicy." Williams did not think plaintiff had been discriminated against. Williams suggested that plaintiff, Peck and Rosario attend mediation about the workplace issues. Although plaintiff was willing to do so, Peck and Rosario did not want to mediate "because they d[id] not believe it would be productive." Williams told plaintiff this on February 3, 2011. Plaintiff emailed Williams "IS THERE NO ONE AT NJDOE WHO CAN STOP THIS BEHAVIOR OF MY COLLEAGUES? DO I HAVE TO WITHSTAND THE OSTRACIZATION [sic] by them without remedy?" After Williams replied that Human Resources would be in touch, plaintiff emailed Williams, copying Price and Corso:

> who is that? I need to know. And who is it who will be in touch? I can't face work tomorrow . . . . I can't do it. The very fact that my colleagues say it would be unproductive tells me all . . . they have no need to care and this will go on without relief . . . no one seems to care. No one . . . . I'm sick, I'm sick . . . . I can't do this an[y]more.

Although Williams originally had recommended plaintiff's referral to the Employee Advisory Services (EAS) for counseling, she recommended to Price that "immediate action be taken" based

7

on the "urgent need for help" emphasized in the email. Price was concerned from the email that plaintiff "may hurt herself."

Plaintiff was directed to attend an evaluation scheduled for her by DOE with Dr. Carl Chiappetta, a psychiatrist, to evaluate if she was fit for duty or a danger to herself or others. During the evaluation on February 28, 2011, plaintiff became concerned about proceeding without first consulting her attorney or union representative because Dr. Chiappetta explained he had been given a file about plaintiff by DOE's Human Resources Department, and she left the appointment. It was rescheduled, but Price advised her that she could be subject to discipline if she did not attend the next scheduled evaluation. Plaintiff was placed on paid leave.

The evaluation was conducted on March 17, 2011. Dr. Chiappetta wrote in a "stat report" that day that plaintiff should receive professional counselling and not return to work for two months. He issued a more complete report on March 18, 2011, that reached the same conclusion. Plaintiff was placed on administrative leave for two months without pay. She received counselling, that she arranged privately, from Dr. Jane Sofair, a psychiatrist who had treated her in the past. Price told plaintiff that before she could return to work, there would need to be a meeting to "clearly outline what the expectations are regarding acceptable office behavior."

Plaintiff filed suit against DOE in April 2011, seeking damages, lost wages, punitive damages and attorney's fees. The parties attempted to resolve the issues. In a letter dated July 1, 2011, DOE's attorney proposed settlement terms that included transferring plaintiff to work for James McBee at DOE's Office of School Improvement in Trenton. Plaintiff rejected the settlement offer.

On July 20, 2011, Dr. Chiappetta issued a report, finding that plaintiff was fit for duty. Price advised plaintiff by letter that she was cleared to return to work and to follow Dr. Chiappetta's recommendation for outpatient treatment and prescribed medications. Price enclosed a guide for appropriate office conduct prepared by a Deputy Attorney General and attached a copy of a portion of the Administrative Code concerning "causes for discipline." She returned to work at the Bergen office on July 25, 2011. Plaintiff continued to email about being excluded by colleagues; she alleged that DOE had not investigated her claims about retaliation for her use of family medical leave.

Plaintiff asked for a transfer to DOE's Sussex office. She was not selected for that position. Plaintiff contended that Rosalie Lamonte, the Sussex County Superintendent, asked plaintiff during the interview about her use of voluntary furlough, a claim denied by Lamonte. She said it was plaintiff who mentioned taking

leave time. Plaintiff was transferred to DOE's office in Trenton under McBee's supervision in November 2011.

A jury trial was conducted in April and May 2015. After sixteen days of trial, on June 2, 2015, the jury found for DOE on all counts that remained. The court dismissed the case.

On appeal, plaintiff claims that errors by the trial court require reversal and retrial. Plaintiff contends the trial court erred by not determining that it was unconstitutional for a public employer to require, based on N.J.A.C. 4A:6-1.4(g), a public employee to undergo a fitness for duty psychiatric evaluation without notice or an opportunity for a hearing. She argues the trial court committed reversible error by admitting into evidence and by allowing testimony about a file of documents that related to her non-FMLA absences. She claims she was denied access to those records when she requested, pretrial, to review them. She contends the court erred by allowing testimony about her past mental health treatment. She asserts the court made erroneous evidentiary rulings by denying the admission as evidence of a DOE letter that offered her settlement terms, permitting testimony about a document that listed "acceptable" office behaviors, admitting reports from a psychiatrist who examined plaintiff for DOE, and by not allowing time for plaintiff to produce a witness. Plaintiff argues the court erred by not charging the jury

separately on the claim of perceived disability discrimination. There is no merit to any of these issues.

## II

"In reviewing a trial court's evidential ruling, an appellate court is limited to examining the decision for abuse of discretion." Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008) (citing Brenman v. Demello, 191 N.J. 18, 31 (2002)). The general rule as to the admission or exclusion of evidence is that "[c]onsiderable latitude is afforded a trial court in determining whether to admit evidence, and that determination will be reversed only if it constitutes an abuse of discretion." State v. Feaster, 156 N.J. 1, 82 (1998) (citations omitted); see also State v. J.A.C., 210 N.J. 281, 295 (2012). Under this standard, an appellate court should not substitute its own judgment for that of the trial court, unless "the trial court's ruling 'was so wide of the mark that a manifest denial of justice resulted.'" State v. Marrero, 148 N.J. 469, 484 (1997) (quoting State v. Kelly, 97 N.J. 178, 216 (1984)).

## A

The trial court allowed the admission into evidence of plaintiff's attendance records that were kept in a file maintained in the Bergen office. The records showed her non-family leave absences and late arrivals from 2009 to 2011. The file was provided to plaintiff during discovery, although it was not shown

to her in 2010, prior to when her lawsuit was filed. Corso told her then that the records could not be used for legal purposes.

Although plaintiff objected to its introduction, the court found that plaintiff "opened the door to her attendance record via her testimony during direct examination." The records also were admissible "for impeachment purposes as [p]laintiff claimed that she 'accounted for all of her leave time.'" The court observed that

> [t]he communications by plaintiff evidencing reasons for use of leave time will allow [d]efendant to establish what leave time was used for what purpose. This is central to issues at bar as [p]laintiff can only recover for retaliation for certain categories of used leave time.

There was no abuse of discretion by the trial court in admitting these records into evidence. Plaintiff's case centered on her allegation that she was discriminated and retaliated against because of her use of family medical leave. Graham and Price testified that it was her other absences, many of which were not pre-approved, that had an operational impact on the office. The records in question were relevant to show the other reasons for plaintiff's absences that did not relate to her use of family medical leave.

The court found that plaintiff had opened the door to this issue by testifying about her attendance record. See State v.

12

James, 144 N.J. 538, 554 (1996). To rebut her claim of discrimination or retaliation, her employer needed to prove legitimate and non-discriminatory reasons for its actions. See Depalma v. Bldg. Inspection Underwriters, 350 N.J. Super. 195, 213-4 (App. Div. 2002) (providing that "the necessary elements and proofs" of an FLA retaliation claim "must follow the pattern applicable to claims under the [LAD]."). The records were probative of DOE's reasons for its actions.

We agree that the admissibility of the records did not depend on whether they were or could be used by DOE for disciplinary purposes. The records were provided to plaintiff in discovery. She had every opportunity to explore the issues raised by them before trial. Therefore, there was no misuse of discretion by the trial court in admitting this evidence, which was relevant, probative and not unduly prejudicial. See N.J.R.E. 401.

B

Plaintiff claims the court erred by permitting testimony about her past mental health treatment. She testified that she had seen a psychiatrist for limited periods since 1987 for depression. Her family doctor prescribed anti-depressant medication for her for over twenty years. Her lawsuit against DOE sought damages for emotional distress, stress and anxiety due to discrimination and retaliation.

The past treatment was relevant to her damage claims based on her testimony. We discern no misapplication of discretion by permitting testimony about plaintiff's mental health treatment under these circumstances. She raised the issue about depression and medication. Her doctor's testimony that she showed "anxiety . . . secondary to hostile workplace," tended to support her claim and thus evidence that she had psychiatric difficulties prior to working in this environment was not unduly prejudicial.

C

The trial court denied plaintiff's request to place in evidence a July 1, 2011 letter from DOE's attorney that proposed settlement of the litigation. Plaintiff contended this letter was proof of DOE's retaliation because it conditioned plaintiff's transfer to another office on her dismissal of this litigation and release of all claims. Plaintiff rejected the settlement offer. She alleged she was entitled to a transfer without conditions. The court denied admission of the letter under N.J.R.E. 408, but did permit plaintiff to testify that DOE "sought to have [her] drop her lawsuit in exchange for a transfer."

We agree that the offer of settlement was properly excluded. N.J.R.E. 408 provides that settlement proposals are generally not "admissible to prove liability for . . . the disputed claim." See Brown v. Pica, 360 N.J. Super. 565, 568 (Law Div. 2001). There

14

is an exception where the evidence is "offered for another purpose."

The letter did not prove plaintiff had a right to transfer. See Klusaritz v. Cape May Cty., 387 N.J. Super. 305, 317 (App. Div. 2006) (proving no "right" to any government job). The letter offered to transfer her to a position under McBee. He would accept administrative transfers although there was no posted vacancy for the position. She also was not prejudiced because the trial court allowed her to argue to the jury that she was denied the transfer because she would not settle the case.

D

Dr. Chiappetta issued four reports. These included a March 17, 2011 "stat" report that stated plaintiff was "unable to work;" a March 18, 2011 "Psychiatric Fitness for Duty Evaluation/Risk Assessment," reaching the same conclusion and making recommendations for outpatient treatment; an April 26, 2011 letter explaining the March 18, 2011 assessment; and a July 20, 2011 summary that concluded plaintiff was fit for duty. Plaintiff contends the trial court erred by admitting into evidence three of Dr. Chiappetta's reports.

The court barred admission of Dr. Chiappetta's March 18, 2011 report toward the end of the trial, finding it was not a business record under the hearsay exception. See N.J.R.E. 803(c)(6). By

that time, it was clear that DOE was not going to call Dr. Chiappetta to testify. The other reports were already in evidence and the jury had heard testimony about them.

We agree with the court that the March 18, 2011 report was not a business record. Although it was part of DOE's file, its reliability had not been established. See N.J.R.E. 803(c)(6) (providing that the "sources of information or the method, purpose or circumstances of preparation" must indicate trust and worthiness). The report could have been admitted, however, as a non-hearsay statement.

Hearsay is "a statement, other than one made by the declarant while testifying . . . offered in evidence to prove the truth of the matter asserted." N.J.R.E. 801.

> Statements that might otherwise be hearsay may be admissible if they are not offered to prove the truth of the matter asserted. See N.J.R.E. 801(c); State v. Long, 173, N.J. 138, 152 (2002). Indeed, "where statements are not offered for the truthfulness of their contents, but only to show that they were in fact made and that the listener took certain action as a result thereof, the statements are not inadmissible hearsay," Spragg v. Shore Care, 293 N.J. Super. 33, 56 (App. Div. 1996) (citation omitted); see also Jugan v. Pollen, 253 N.J. Super. 123, 136 (App. Div. 1992).
>
> [El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 164 (App. Div. 2005).]

In El-Sioufi, plaintiff alleged employment discrimination in violation of LAD based on her religion. She contended that a certification and information from a file, containing complaints about her, should not have been considered by the trial judge on summary judgment. We found that the statements relied on by defendants "were relevant" to show its basis for reassigning her. Ibid. The issue was not whether the information in the file was true; but whether defendants "acted reasonably in light of that information." Id. at 165.

In Carmona v. Resorts Int'l Hotel, Inc., 189 N.J. 354 (2007), the Court held that "within the usual limits that govern the admissibility of evidence as a whole, an investigative report concerning an employee is admissible as non-hearsay statements whenever the employer's motivations are directly at issue." Id. at 376.

The issue here was not whether plaintiff actually was fit for duty. Rather, the March 17, 2011 "stat" report and the March 18, 2011 follow-up report were relevant in explaining the DOE's "legitimate and non-discriminatory" action in placing plaintiff on administrative leave, which was part of DOE's defense to the LAD claim. The March 17, 2011 "stat" report also contained a statement from Dr. Chiappetta that "upon return to work, have supervisor meet with her and establish very clear 'expectations'

17

about what is acceptable behavior or not." That language was relevant to DOE's defense about creating a list of acceptable behaviors that plaintiff challenged as retaliatory conduct by DOE. Thus, admission of these documents for non-hearsay purposes was appropriate.

The April 26, 2011 letter from Dr. Chiappetta was in response to DOE's letter asking him "to expand upon [his] findings." His response was that

> [h]er problematic behaviors have been well documented, and have caused much tension, fear, disruption and loss of efficiency. Those factors have effected [sic] the way ordinary day to day business has been conducted in her workplace, on the part of her co-workers and superiors.

That letter simply reiterated the operational effects that other DOE witnesses testified about. Its admission was not prejudicial to plaintiff.

The July 20, 2011 report by Dr. Chiappetta stated that plaintiff was fit for duty. Admission of the report to show that the statements were made and that the "listener took certain action as a result thereof," El Sioufi, 382 N.J. Super. at 164, was for non-hearsay purposes. The report opined that plaintiff was fit for duty and did not pose any danger to herself or others. Although the better approach might have been to redact Dr. Chiappetta's diagnoses from the document, see N.J.R.E. 808, we cannot say it

18

was unduly prejudicial to plaintiff or "clearly capable of creating an unjust result."  R. 2:10-2.

E

Plaintiff claims the court erred in allowing testimony about her attorney's March 29, 2011 letter that provided "[i]f there is a list of acceptable office behaviors that exists at my client's place of employment, I would ask that this list be forwarded to me so that I may review the same with my client prior to her return to work."  DOE relied on the letter to argue that plaintiff asked for a list of acceptable behaviors, while plaintiff argued this was simply more evidence of retaliation by DOE.

We discern no error by the trial court's exercise of discretion here.  Plaintiff was permitted to argue that her attorney was not asking DOE to create a list of acceptable behaviors but wanted DOE to provide this information if it already existed.  DOE was permitted to argue that plaintiff requested the list of behaviors.  The jury heard both sides of this issue.  After carefully reviewing the record, we conclude that plaintiff's arguments about this issue are without sufficient merit to warrant further discussion in a written opinion.  R. 2:11-3(e)(1)(E).

A-5113-14T3

Plaintiff argues the court erred by not delaying the trial so that she could subpoena Robert Gilmartin for limited rebuttal testimony. We find no abuse of discretion.

Gilmartin was the Bergen County Superintendent after Graham retired. In a May 20, 2015 order, the trial court rejected plaintiff's request for an adverse inference charge when DOE did not call Gilmartin as a witness. The court reasoned that Gilmartin was available to both parties as a witness because he no longer was employed by DOE.

Plaintiff then attempted to subpoena Gilmartin to rebut certain limited testimony, but he was out of state and no one knew when he would be available to testify. The court denied plaintiff's request to delay the trial for his testimony on rebuttal.

The trial court must "weigh in the balance the concern of the law for orderly and efficient administration of the jury process." State v. Garfole, 76 N.J. 445, 457 (1978). Evidence Rule 403 allows the court to exclude evidence to avoid "undue delay, waste of time, or needless presentation of cumulative evidence." N.J.R.E. 403.

Plaintiff wanted to call Gilmartin as a witness but did not actually know when he would be available to testify. His testimony

was proffered to rebut other witnesses whose cross-examination already had elicited testimony about the weaknesses plaintiff sought to explore through Gilmartin. In these circumstances, there was no abuse of discretion by declining to further delay the trial.

G

Plaintiff claims the court's jury instruction on discrimination constituted reversible error. She wanted a separate instruction to the jury on discrete acts of discrimination in addition to the hostile work environment instruction. In rejecting this request, the court found that plaintiff's claim for discrimination encompassed her "claim for hostile work environment under LAD based on perceived disability." "The discrimination . . . in this case was the hostile work environment itself." The court declined to charge on discrete acts of discrimination.

In reviewing the adequacy of the judge's charge to the jury, we must consider the charge as a whole in determining whether it was prejudicial. See State v. Figueroa, 190 N.J. 219, 246 (2007) (citing State v. Wilbely, 63 N.J. 420, 422 (1973)). "[A]ppropriate and proper jury charges are essential for a fair trial." State v. Baum, 224 N.J. 147, 158-59 (2016) (quoting State v. Reddish, 181 N.J. 553, 613 (2004) (citation omitted)); State v. Collier, 90 N.J. 117, 122 (1982) (quoting State v. Green, 86 N.J. 281, 287

21

(1981)).  "[E]rroneous jury instructions constitute [] reversible error where the jury outcome might have been different had the jury been instructed correctly."  <u>Washington v. Perez</u>, 219 N.J. 338, 351 (2014).

A hostile environment claim under LAD is different from a discrete act claim.  Regarding hostile environment claims,

> [t]heir very nature involves repeated conduct. The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.  Such claims are based on the cumulative affect of individual acts.
>
> [<u>Shepherd v. Hunterdon Developmental Ctr.</u>, 174 N.J. 1, 19 (2002) (quoting <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 105 (2002)).]

There was nothing erroneous or prejudicial about the judge's charge to the jury.  Plaintiff's Count Four did not allege discrete acts of discrimination.

H

Plaintiff contends she was constitutionally entitled to notice and an opportunity for a hearing before she was required to undergo a fitness for duty examination.

It is well-settled that appellate courts "will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available

22

'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)).

Plaintiff failed to plead a constitutional claim in her complaint. An appellate court should not recognize a cause of action not pleaded in the plaintiff's complaint. Bauer v. Nesbitt, 198 N.J. 601, 610 (2009). Plaintiff also advised the court that she did not want it to decide the constitutionality of the fitness for duty examination and was raising the issue to argue against admission of Dr. Chiappetta's reports.

That said, plaintiff had notice and an opportunity to contest the examination. When she was first scheduled for the examination, she appeared and then left because she wanted the opportunity to consult with her attorney. She consulted with a union representative, the examination was rescheduled, and she attended. There was ample opportunity between the two examinations for plaintiff to assert that she wanted a hearing or to ask for relief under her contract but she did not do so. Therefore, we have no need to reach the constitutionality of the regulation cited by DOE as the basis for the examination.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

23

A-5113-14T3